## COMMONWEALTH *vs.* HAL McINTOSH.

No. 09-P-626.

Suffolk. March 24, 2010. - October 8, 2010.

Present: DUFFLY, SMITH, & COHEN, JJ.

*Firearms. Evidence,* Firearm, Constructive possession. *Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel.

At the trial of indictments charging the defendant with possession of a firearm, possession of ammunition, and possession of a loaded firearm, the evidence, viewed in the light most favorable to the Commonwealth, supported the inference that the defendant, at the time of his initial confrontation with police, had in his possession the firearm in question, and that, afraid that the firearm would be discovered, he ran into a bedroom and hid the firearm under a mattress; moreover, the evidence was sufficient to support a conclusion that the defendant constructively possessed the firearm, in that the defendant ran to the bedroom, proceeded directly to the bed where the firearm was later discovered, and attempted to prevent others from entering the room. [40-42]

At the trial of indictments charging the defendant with possession of a firearm, possession of ammunition, and possession of a loaded firearm, in which the theory of the defense was that the defendant never possessed the firearm in question and accordingly did not place it under the mattress where it was discovered, trial counsel was constitutionally ineffective where, in closing argument, counsel misstated evidence in a way that undermined the defense, and the prejudicial effect of this error was compounded by the prosecutor's repetition of the misstatement; and where the standard instructions regarding the purpose of counsels' argument did not address the error in specific terms; therefore, because the evidence was not overwhelming, the errors went to the heart of the case, and there were no curative instructions, this court reversed the defendant's convictions and remanded the matter for a new trial. [42-44]

INDICTMENTS found and returned in the Superior Court Department on April 27, 2007.

The cases were tried before *Frank M. Gaziano,* J.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Ryan McLaughlin* (*Helle Sachse*, Assistant District Attorney, with him) for the Commonwealth.

SMITH, J. The defendant, Hal McIntosh, appeals from his convictions on three indictments charging him with (1) possession of a firearm, second and subsequent offense; (2) possession of ammunition; and (3) possession of a loaded firearm. On appeal, the defendant claims that the judge committed reversible error in denying his motion for a required finding of not guilty on all three indictments. The defendant also contends that his trial counsel was constitutionally ineffective.

1. *Evidence at the trial.* Because the defendant challenges the sufficiency of the evidence, we summarize in detail the evidence, considering it in the light most favorable to the Commonwealth. *Commonwealth* v. *Rodriguez*, 456 Mass. 578, 579 (2010). On January 7, 2007, Officer Sean Rooney was in a marked police cruiser and in uniform, patrolling an area in the Mattapan section of Boston. He was alone in his cruiser but was accompanied by another marked cruiser, operated by Officer Charlie Daniels. At about 6:30 P.M., the two police officers drove by 43 Harvard Street and observed two males standing outside on the top front step of the building. One was later identified as Daishaun Brown; the other was later identified as the defendant. The defendant made eye contact with Officer Rooney and then immediately turned and opened the outer door of 43 Harvard Street, but was unable to enter the building.

The officers parked their cruisers and spoke to the individuals. Officer Rooney spoke to the defendant, the other officer with Brown. Officer Rooney asked the defendant "if he lived there and needed help with regard to getting access." Both individuals seemed a little nervous and a little apprehensive but the defendant was not the subject of a patfrisk at that time. In answer to Officer Rooney's questions, the defendant stated that he did not live at that house, but was waiting for someone. At Officer Rooney's request, the defendant produced an identification card, handing it to the officer with his left hand. At that time, the defendant was also holding a cellular telephone, "scrolling through and using the walkie-talkie feature." While Officer Rooney was copying the defendant's identification card information, the defendant placed a full-fingered baseball batting glove on his right hand.

As Officer Rooney finished copying the defendant's information, the defendant went to the front door of the building and opened it. Officer Rooney told the defendant, "[D]on't go too far away. I still have your license. Come back and grab it. I'm all set with it." The defendant again reached out with his left hand and took back his identification card.

At that point, the owner of the building, Ms. Lewis, opened the door of the first-floor apartment that had been locked, came out, and asked, "What's going on?" Ms. Lewis was then asked, apparently by the defendant, "Is Seyon there?" Ms. Lewis told the defendant that she did not know him (the defendant) and that "there's no one here." The defendant responded, "Well, Seyon has my thing, and I need to get it."[1] He then pushed Ms. Lewis to one side, entered the first-floor apartment, and went down a hallway, followed by Ms. Lewis and Officer Rooney. The defendant entered a bedroom, followed by Ms. Lewis. She saw the defendant bending by the middle part of a bed, but she could not see what he was doing. Ms. Lewis left the room to get Officer Rooney and the defendant closed the door. Ms. Lewis came back with the officer and attempted to open the door, but could not. Officer Rooney also tried, unsuccessfully at first, to get the door open. He could tell that the door was being held shut from the inside while he was trying to push it open. Officer Rooney finally pushed the door open and found the defendant standing directly behind it, within arm's reach of the door. Officer Rooney immediately pat frisked the defendant and, not finding any weapon on him, brought him outside to the front stairs and ordered him to sit there.

Officer Rooney went back to the bedroom where he was informed that Ms. Lewis's grandson, Kamau, occupied the room and was taking a shower. Officer Rooney suggested that they shut the door, wait for Kamau to return, and have him inspect his room to see if anything was missing, or if there was something in the room that should not be there.

Kamau finished his shower and joined Ms. Lewis and Officer Rooney. Kamau had known the defendant for about four or five

---

[1]Seyon Marshall lived in the first-floor apartment in a room across the hall from a room occupied by Kamau Lewis. Kamau and Seyon are Ms. Lewis's grandsons. It was in Kamau's room that a gun was found.

years. The defendant was also a friend of Seyon Marshall, Kamau's cousin. See note 1, *supra.* Kamau stated that no one should be going into his room in his absence. At Officer Rooney's direction, Ms. Lewis, Kamau, and another police officer entered the room. Ms. Lewis asked Kamau to lift the mattress off the bed where the defendant was seen bending. A loaded handgun was found under the mattress. It was located near the foot of the mattress, an arm's length from the bedroom door. Kamau had last looked under the mattress the day before and had not seen a gun at that time. The firearm bore a single fingerprint of an unknown person.

The defendant did not testify at trial but through cross-examination and the testimony of the defendant's companion, Brown, offered the theory that he neither had the firearm on his person nor placed it under the mattress and that another individual, possibly Kamau, placed the gun there.

2. *Sufficiency of the evidence.* At trial, the Commonwealth proceeded on the theory that at the time the defendant was first confronted by Officer Rooney, the defendant was in actual possession of the firearm. Because the defendant was afraid that Office Rooney would discover the firearm, the defendant ran into the bedroom and placed the firearm under the mattress. The case was put to the jury on alternative theories of the defendant's actual or constructive possession of the firearm. On appeal, the defendant claims that the judge committed reversible error when he denied the defendant's motion for a required finding of not guilty because the evidence at the close of the Commonwealth's case was insufficient to convict him under either theory.

We review the denial of the motion for a required finding of not guilty "to determine whether the evidence offered by the Commonwealth was sufficient to permit the jury to infer that the Commonwealth has met its burden of proving the essential elements of the crimes charged beyond a reasonable doubt. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979)." *Commonwealth* v. *Rodriguez,* 456 Mass. at 582. Here, the actual possession theory advanced by the Commonwealth was not based on observations or fingerprints, but rather relied entirely on circumstantial evidence. *Commonwealth* v. *Martino,* 412

Mass. 267, 272 (1992) ("A conviction may be properly based entirely on circumstantial evidence so long as that evidence establishes the defendant's guilt beyond a reasonable doubt").

The evidence presented at trial supported an inference that the defendant placed the firearm under the mattress. When first seen by the police, the defendant was attempting to enter 43 Harvard Street but was unable to open the door. When confronted by the police, he appeared "nervous" and "apprehensive." While talking to the police, the defendant placed a baseball batting glove on his right hand. Thereafter, when Ms. Lewis opened the previously locked door to the first-floor apartment and came out, the defendant pushed her to one side and ran into the apartment.[2] The defendant immediately entered a bedroom, closed the door, and prevented Ms. Lewis and Officer Rooney from entering the room. He was seen bending down near the middle part of the bed in which the firearm was found. The firearm had not been under the mattress the day before the incident. Therefore, the evidence viewed in the light most favorable to the Commonwealth supports the inference that the defendant, at the time of the initial confrontation with the police, had in his possession the firearm and, afraid it would be discovered, panicked, ran into the bedroom, and hid it under the mattress.

The evidence was also sufficient as to constructive possession. " 'Constructive possession' requires proof that the defendant had 'knowledge coupled with the ability and intention to exercise dominion and control.' " *Commonwealth* v. *Sann Than*, 442 Mass. 748, 751 (2004), quoting from *Commonwealth* v. *Sespedes*, 442 Mass. 95, 99 (2004). Knowledge may be established by circumstantial evidence "if the evidence warrants a reasonable inference to that effect." *Commonwealth* v. *Cotto*, 69 Mass. App. Ct. 589, 592 (2007), quoting from *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991). Intent to exercise dominion and control can be inferred from the defendant's conduct. See *Commonwealth* v. *Whitlock*, 39 Mass. App. Ct. 514, 519 (1995). "It is settled . . .

---

[2]Officer Rooney testified that the defendant "ran into" the apartment. Ms. Lewis testified that the defendant "walked" into the apartment, but did not run. Because we accept the evidence in the light most favorable to the Commonwealth, we take Officer Rooney's version. Defense counsel, however, in his closing argument also adopted Officer Rooney's version, an error we address later in the opinion.

that the requisite knowledge, power and intent to exercise control over a firearm may be shown by 'presence, supplemented by other incriminating evidence.' " *Commonwealth* v. *Valentin*, 55 Mass. App. Ct. 667, 671 (2002), quoting from *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977). Here, the presence of the defendant was supplemented by evidence that he ran to the bedroom, proceeded directly to the bed where the firearm was discovered, and attempted to prevent others from entering the room.

Therefore, we reject the defendant's claim that the evidence was insufficient to support his convictions of possession of a firearm and possession of ammunition.

3. *Ineffective assistance of counsel.* On appeal, the defendant claims that his trial counsel was constitutionally ineffective because of misstatements made in his closing argument. "The occasions when a court can resolve an ineffective assistance claim on direct appeal are exceptional, and our case law strongly disfavors raising ineffective assistance claims on direct appeal." *Commonwealth* v. *Zinser*, 446 Mass. 807, 809 n.2 (2006). "The claim may nevertheless be resolved on direct appeal when 'the factual basis of the [ineffective assistance] claim appears undisputedly on the trial record.' " *Commonwealth* v. *Livington*, 70 Mass. App. Ct. 745, 748 (2007), quoting from *Commonwealth* v. *Diaz*, 448 Mass. 286, 289 (2007). We consider the defendant's claim under that "narrow exception." *Commonwealth* v. *Lynch*, 70 Mass. App. Ct. 22, 29 n.6 (2007).

The standards on which the effectiveness of counsel will be evaluated are well known. "The defendant must show that counsel's performance 'f[ell] measurably below that which might be expected from an ordinarily fallible lawyer' and that, as a result, the defendant has been deprived of 'an otherwise available, substantial ground of defence.' " *Commonwealth* v. *McCrae*, 54 Mass. App. Ct. 27, 29 (2002), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Here, the defendant argues that certain misstatements in defense counsel's closing argument deprived him "of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, *supra* at 96.

The defense theory at the trial was that the defendant never possessed the firearm, and accordingly did not place it under the mattress. Further, the defendant claimed that others placed

the firearm under the mattress. Defense counsel destroyed that defense by misstating the evidence in his closing argument. It is undisputed that no one testified to having observed the defendant with the firearm, or to having seen him place it under the mattress. Rather, Ms. Lewis, a Commonwealth witness, testified that when she got to the bedroom, "I saw [the defendant] bending by the bed. I don't know what he was looking for, but he quickly got up. I turned around and went back outside." Later, when she was asked by the prosecutor, "And could you see if he was doing anything?" she responded, "No. I didn't see anything." During closing argument, however, defense counsel told the jury, "Ms. Lewis . . . tells you on the stand that she goes into the bedroom and sees [the defendant] kneeling by the bed and *sees him put something under it* and then gets out and comes out and gets the officer" (emphasis added).

Defense counsel's comment was a complete misstatement of Ms. Lewis's testimony and was prejudicial because it undermined the defense advanced at trial.[3] See *Commonwealth* v. *Triplett*, 398 Mass. 561, 569 (1986) ("Counsel's statements in his closing were tantamount to an admission of his client's guilt, . . . and left the client denuded of a defense" [quotations and citations omitted]). In such circumstances, a defendant is denied effective assistance of counsel. Further, the prejudicial effect of the error was compounded by the prosecutor, who told the jury in her closing argument that the defendant was observed "stashing [the firearm] by Ms. Lewis."

The Commonwealth argues that the judge's instructions to the jury cured any error caused by the closing arguments. The judge gave the standard instructions as to the purpose of counsels' closing arguments and that the jurors, not the lawyers, are the fact finders. The instructions, however, did not address the errors in specific terms. *Commonwealth* v. *Beaudry*, 445 Mass. 577, 585 (2005).

---

[3]Defense counsel further undermined the defense by stating three times during his closing argument that the defendant "ran" or had "run" into the apartment. Although there was a basis for those statements based on Officer Rooney's testimony, Ms. Lewis testified that the defendant "walked in. He didn't run." See note 2, *supra*. Defense counsel should not have assumed the correctness of the testimony less favorable to the defendant on the point. See *Commonwealth* v. *Triplett*, 398 Mass. 561, 568-569 (1986).

The evidence was not overwhelming, the errors went to the heart of the case, and there were no curative instructions. Accordingly, the judgments of the Superior Court are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*