## COMMONWEALTH *vs.* ERIC ROMERO.

Middlesex. November 6, 2012. - March 15, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Firearms. Practice, Criminal,* Admissions and confessions. *Evidence,* Constructive possession.

At a criminal trial, the judge did not err in admitting in evidence, as an admission of a party opponent, the defendant's extrajudicial statement. [651-652]
At the trial of a criminal complaint charging the defendant with carrying a firearm without a license in violation of G. L. c. 269, § 10 (*a*), based on a theory of constructive possession, the evidence proffered by the Commonwealth was adequate to establish as a matter of law that the defendant knew the firearm was present in the motor vehicle he was operating and that he had the ability to exercise control over the weapon [652-654]; however, the fact that the defendant was the owner and operator of the vehicle, without additional incriminatory evidence, was insufficient to prove that the defendant had the requisite intention to control the firearm [654-659].

COMPLAINT received and sworn to in the Waltham Division of the District Court Department on April 23, 2008.

The case was tried before *Dyanne J. Klein,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Devon Dietz Hincapie* for the defendant.

*Ceara C. Mahoney,* Assistant District Attorney (*Kevin J. Curtin,* Assistant District Attorney, with her) for the Commonwealth.

*Brownlow M. Speer,* Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

CORDY, J. The defendant, Eric Romero, was convicted of carrying a firearm without a license in violation of G. L. c. 269, § 10 (*a*), based on a theory of constructive possession. On appeal, he asserts that the Commonwealth failed to present evidence sufficient to establish as a matter of law that he had

(1) knowledge of the firearm's presence in his vehicle, (2) the ability to exercise control over the weapon, and (3) the intent to do so. He also argues that the evidence on these points is susceptible to "equal and inconsistent" inferences and choosing between them amounts to impermissible conjecture. Additionally, the defendant contends that it was error to permit the investigating police officer to testify about the defendant's extrajudicial statements made at the time of his arrest, because they were not relevant to any element of the charged offense and introduced collateral issues that confused the jury. Finally, the defendant avers that the Commonwealth's reliance on a ballistics certificate, in order to prove the weapon was a "firearm" as defined by G. L. c. 140, § 121, without making the ballistician available for cross-examination was testimonial hearsay and violated the defendant's right to confrontation under the Sixth Amendment to the United States Constitution. On appeal, a divided panel of the Appeals Court affirmed. *Commonwealth* v. *Romero*, 80 Mass. App. Ct. 791 (2011) (*Romero*). We granted the defendant's application for further appellate review.[1]

We conclude at the outset that the trial judge did not err in admitting the defendant's extrajudicial statements. We further conclude that although the evidence proffered by the Commonwealth was adequate to establish that the defendant knew the firearm was present in the motor vehicle he was operating and that he had the ability to exercise control over the weapon, the evidence was insufficient to prove he had the requisite intention to control the firearm. Consequently, the defendant is entitled to a directed verdict of not guilty.[2]

1. *Background.* The jury could have found the following facts. On April 23, 2008, just after 4:30 P.M., the defendant drove to his girl friend's house on Chestnut Street in Waltham to pick her up for a night out. While he waited outside, her brother, Eduardo Alvarez, approached the defendant's vehicle and showed him his firearm. The defendant looked at the firearm,

---

[1] We acknowledge the amicus brief of the Committee for Public Counsel Services.

[2] Because we dispose of the case on this ground, we do not address whether the judge's admission of the ballistician's report without his in-court testimony or the application of the "equal and inconsistent" doctrine independently entitles the defendant to relief.

touched it, and gave it back to Alvarez. When his girl friend came out of the house, the two of them left in the defendant's motor vehicle. When they returned, later that evening, Alvarez and his brothers were outside, and they asked if they could go for a ride in the defendant's new vehicle. The defendant agreed and proceeded to drive them around for a short period of time but soon returned to the house, at which point they remained in the now parked vehicle listening to music.

Meanwhile, Officer Dennis M. Deveney, Jr., of the Waltham police department was patrolling in the area. At approximately 1:30 A.M., his attention was drawn to the defendant's motor vehicle, a two-door sports coupe, parked on a dimly lit section of Chestnut Street. As Deveney drove past the vehicle, he observed several individuals sitting inside, but due to the way the occupants were sitting, he could only see the "tops of their torso[s] and their heads." Deveney also noticed that the interior dome light turned off as he passed. This observation prompted Deveney to return to Chestnut Street, where he parked his cruiser thirty feet behind the defendant's vehicle so that he could make further observations.

Deveney began to walk down Chestnut Street, stopping three to five feet behind the vehicle. He waited for about one minute, trying to determine what the occupants were doing. The front passenger's side window was open and Deveney heard music playing. He watched as the occupant sitting behind the driver reached toward the front seat. He also observed the defendant, who was sitting in the driver's seat, look from side to side, while Alvarez, who was sitting in the front passenger seat, examined an object in his hand. Based on these observations, Deveney shone his flashlight into the vehicle and asked the occupants, "What's going on guys?" Looking panicked, Alvarez turned toward Deveney and immediately dropped the object he was holding into his lap. Deveney directed his flashlight to the object and saw that it was a black handgun, at which point he called for backup and awaited its arrival before removing the occupants from the vehicle.

Soon thereafter, Deveney read the defendant the Miranda warnings, and the defendant agreed to speak with him. During their conversation, the defendant acknowledged that he knew

Alvarez owned a firearm, but that he was unaware that Alvarez had it with him in the vehicle or that it was being passed around. The defendant also told Deveney that Alvarez had shown him a firearm earlier that day and that he had handled the weapon. Following this conversation, Deveney placed the defendant under arrest. The unloaded firearm was then sent to the State police crime laboratory to determine whether it was operable. After testing, the firearm was returned to the Waltham police department along with one spent bullet casing and a ballistics report confirming that the firearm was functional.

2. *Discussion.* a. *Admissibility of the defendant's out-of-court statement.* Because it is relevant to our later analysis, we first consider whether the judge correctly admitted in evidence the defendant's statement to Deveney that Alvarez showed him a gun earlier in the day. The defendant argues that this statement is inadmissible because it is (1) hearsay, (2) irrelevant to any material issue, and (3) overly prejudicial. The Commonwealth responds that the statement is admissible as circumstantial evidence that the defendant knew the firearm was in his vehicle as well as for its truth as an admission of a party opponent. We agree with the Commonwealth.

Hearsay is an out-of-court statement offered by a witness at trial or hearing to prove the truth of the matter asserted. Mass. G. Evid. § 801(c) (2012). See *Commonwealth* v. *Marshall*, 434 Mass. 358, 365-366 (2001). Here, however, the out-of-court statements at issue were uttered by the defendant and qualify as admissions of a party opponent[3] pertinent to his knowledge of Alvarez's possession of a firearm earlier in the day and, as a possible result, his awareness of its presence in the vehicle at the time of his arrest.[4] Consequently, the defendant's statement

---

[3]"An admission in a criminal case is a statement by the accused, direct or implied, of facts pertinent to the issue, which although insufficient in itself to warrant a conviction tends in connection with proof of other facts to establish his guilt." Mass. G. Evid. § 801(d)(2)(A) (2012), quoting *Commonwealth* v. *Bonomi*, 335 Mass. 327, 347 (1957).

[4]The defendant's argument that his out-of-court statement to Officer Dennis M. Deveney, Jr., is inadmissible under the rule preventing admission of "extrajudicial accusatory statements made in the presence of [the] defendant . . . where the defendant has denied the accusations [or remained silent]," *Commonwealth* v. *Locke*, 335 Mass. 106, 115 (1956), is unavailing. That rule

is not hearsay and is admissible for its truth. Mass. G. Evid. § 801(d)(2)(A) (2012).[5] There was no error.

b. *Sufficiency of the evidence.* In reviewing the sufficiency of the evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-329 (1979). General Laws c. 269, § 10 (*a*), provides: "Whoever . . . knowingly has in his possession; or knowingly has under his control in a vehicle; a firearm, loaded or unloaded . . . without . . . (2) having in effect a license to carry firearms issued under [G. L. c. 140, § 131] . . . shall be punished by imprisonment in the state prison . . . ." In order to sustain a conviction, the Commonwealth must prove beyond a reasonable doubt that the defendant "actually or constructively possessed the firearm," *Commonwealth* v. *Hubbard*, 69 Mass. App. Ct. 232, 237 (2007), and that he did so knowingly. See *Commonwealth* v. *Gouse*, 461 Mass. 787, 795 (2012).[6,7]

concerns the admissibility of accusatory statements made by a *third party* to the defendant. Here, the statement at issue is an unequivocal admission by the defendant in response to Deveney's questioning. As such, the rule from our decision in the *Locke* case is inapposite.

[5]The defendant's statement was also admissible for the nonhearsay purpose of showing his state of mind at the time of his arrest, that is, that he knew the firearm was in his vehicle because he had seen Alvarez with it earlier in the day. *Commonwealth* v. *Montanez*, 439 Mass. 441, 447-448 (2003), quoting P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 8.2.6 (7th ed. 1999) ("statements may be offered as evidence of state of mind without implicating the hearsay rule if the statements either do not contain assertions or are offered without regard to whether the assertions are true").

[6]In the circumstances of this case, where the defendant is the operator of a motor vehicle in which a firearm is discovered (not on his person), the elements of constructive possession of the firearm are essentially identical to the elements of knowingly having the firearm under one's control in a motor vehicle. See *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977).

[7]"The holding of a valid license . . . is an affirmative defense" to the charge of unlawfully possessing a firearm; the Commonwealth is not required to prove that the defendant did not have a firearm license. *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977). "[T]he burden is on the defendant to come forward with evidence of the defense . . . [and if] such evidence is presented . . . the burden [shifts to] the prosecution to persuade the trier of facts

Because the firearm was not found on the defendant's person, we must determine whether there was sufficient evidence to support the Commonwealth's theory of constructive possession. Proof of constructive possession requires the Commonwealth to show "knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989) (*Brzezinski*), quoting *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). "Proof of possession of [contraband] may be established by circumstantial evidence, and the inferences that can be drawn therefrom." *Brzezinski, supra,* quoting *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 426 (1985). However, "[p]resence alone cannot show the requisite knowledge, power, or intention to exercise control over [contraband], but presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977) (*Albano*), quoting *United States* v. *Birmley*, 529 F.2d 103, 108 (6th Cir. 1976).

We begin by considering whether the defendant knew that the firearm was in his vehicle. In making its case, the Commonwealth principally relies on the facts that the defendant held title to the vehicle and that the weapon was in plain view. By contrast, the defendant argues that, due to its small size, the firearm was not in plain view and that the defendant's statement to Deveney did not support an inference that he was aware of the weapon's presence.

We agree with the Appeals Court that the evidence was sufficient to support the inference that the defendant knew of the firearm. Although the defendant's knowledge of the firearm could not be proved based solely on the fact that he and the firearm were in the same vehicle, see *Albano, supra,* the fact that Alvarez was openly handling the firearm in the front passenger seat, a position immediately adjacent to the defendant, see *id.* at 135, makes it is reasonable to infer that the defendant knew of the firearm's presence. See *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 147 (2008) (presence of three small packets of cocaine as well as larger quantities of heroin and cocaine in

beyond a reasonable doubt that the defense does not exist." *Id.* Here, there was no evidence that the defendant had a license to possess a firearm.

loosely covered bucket supported inference that defendant knew of drugs because they were plainly visible prior to police entering apartment). This inference was strengthened by the defendant's admission to Deveney that Alvarez had shown him (and let him handle) a firearm earlier in the day.

We turn next to the defendant's ability to control the weapon. The Commonwealth argues that the defendant's proximity to the firearm inside his own vehicle, coupled with the defendant's behavior, suggests an ability to control the weapon. The defendant counters by urging that the distance of twelve to eighteen inches between the defendant and Alvarez was enough to preclude an ability to control the firearm. On this point, the Appeals Court concluded that an "owner or operator of a motor vehicle, who has knowledge of the presence of a firearm, *unquestionably* has the ability to exercise dominion and control over that firearm" (emphasis added). *Romero, supra* at 796.

Although we agree that the evidence was sufficient to support the inference that the defendant had the ability to exercise control over the firearm, we do not adopt the Appeals Court's overly expansive rule. There are certainly instances where one's ability to control a firearm does not follow "unquestionably" from one's ownership or operation of a vehicle. We need not speculate on what those situations might be, however, because in this case the defendant's proximity to the firearm, coupled with Alvarez's willingness to let him handle the weapon earlier in the day, are sufficient to support the inference that the defendant had the ability to exercise control over the firearm. See *Commonwealth* v. *Frongillo (No. 1)*, 66 Mass. App. Ct. 677, 683-684 (2006); *Commonwealth* v. *Delarosa*, 50 Mass. App. Ct. 623, 625-626, 628 (2000).

This brings us to the determinative issue whether the evidence was sufficient to establish that the defendant intended to exercise "dominion and control" over the firearm. See *Brzezinski, supra*, quoting *Commonwealth* v. *Rosa, supra*. We reiterate that, without more, presence alone is insufficient to establish an intention to exercise control. *Albano, supra*. Rather, the defendant's presence in the vehicle must be augmented by additional inculpatory evidence. *Id.*

The Appeals Court isolated several "plus factors" that

"[tipped] the scale in favor of sufficiency." *Id.*, quoting *United States* v. *Birmley, supra.* It principally relied on the fact that the defendant was the owner and operator of the vehicle in which the firearm was found. *Romero, supra.* The court reasoned that, where an "owner and operator of the car chooses not to exclude a passenger who he knows has a weapon, it is a reasonable inference that the owner and operator also has the intent to exercise dominion and control over the firearm as he does over the car itself." *Id.* The Appeals Court further cited the proximity of the firearm to the defendant in conjunction with the firearm's conspicuity as supporting an inference that the weapon was being passed around the vehicle. *Id.* at 796-797. Finally, the Appeals Court focused on the circumstances of the encounter: It was 1:30 A.M., the vehicle was parked on a dimly lit street, all four occupants were "slouched" down in their seats, the dome light was extinguished when the police cruiser went past, and Deveney observed the firearm being passed from the rear passenger to Alvarez in the front passenger seat. *Id.* at 797. From these facts the Appeals Court concluded that the occupants were attempting to conceal "surreptitious criminal activity." *Id.* at 798.

We begin with the weight given to the defendant's ownership of the vehicle. We have never squarely addressed how one's proprietary interest relates to that individual's intent to exercise control over contraband. However, a review of our leading cases reveals an unstated requirement that for one's ownership interest to have significance in this regard there must be additional incriminatory evidence that links that interest to the particular contraband at issue.

In *Brzezinski, supra* at 410, we noted: "Not only was the defendant present in the apartment at the time the contraband was found, but the apartment was *rented* to him and his girl friend" (emphasis added). However, our analysis did not stop there. We went on to cite additional evidence that connected his proprietary interest to the drugs, such as "$450 inside the defendant's underwear . . . $100 in his pants pocket . . . a triple beam scale . . . test tubes used for testing the quality of cocaine, tubes used for snorting cocaine, devices used to sift cocaine, and books on cocaine." *Id.* These additional indicia of

criminal activity provided a link between the defendant's rental of the apartment and the drugs. See *Commonwealth* v. *Escalera,* 462 Mass. 636, 649-650 (2012) (defendant's proprietary interest in apartment supplemented by additional evidence connecting him to drugs found in basement); *Commonwealth* v. *Pratt,* 407 Mass. 647, 652 (1990) (sufficient evidence to support inference that defendant intended to exercise dominion over narcotics found in home where defendant was only person occupying residence at time of arrest, and variety of incriminatory drugs and related paraphernalia were found amidst her personal belongings).

By contrast, in *Commonwealth* v. *Sespedes,* 442 Mass. 95, 100-102 (2004), we reversed the denial of the defendant's motion for required findings of not guilty because the only evidence linking the defendant to an apartment where police discovered drugs was his presence at the scene and the fact that he possessed a set of keys that unlocked the apartment. We concluded that "[t]he ability to exercise control over the premises and the defendant's brief presence in them is insufficient . . . to imply constructive possession of the hidden contraband." *Id.* at 101. Unlike our decision in the *Brzezinski* case, there was no additional evidence linking the defendant's access to the apartment to the drugs located inside. See *Commonwealth* v. *Boria,* 440 Mass. 416, 418-420 (2003) (fact that defendant living in place where two others also present and drugs in plain view and being sold not sufficient to support inference of intent to control where there was no additional incriminatory evidence).

Here, in order to "establish the defendant's 'relationship' to contraband located in a common area sufficient to permit an inference of control over the contraband, there must be a more particular link to the defendant" other than his presence and ownership. *Commonwealth* v. *Boria, supra* at 420-421, citing *Commonwealth* v. *Pratt, supra.* Although the defendant was the owner of the vehicle and was present in the vehicle, there was nothing specifically connecting him to the firearm. The defendant was not wearing a holster sized to fit the firearm, see *Commonwealth* v. *Escalera, supra* at 649 (holster found in defendant's bedroom sized to fit two handguns recovered from basement where drugs located), nor was he carrying ammunition that

matched the weapon. Cf. *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 147 (2008) (sufficient evidence of intent to control where defendants were found in presence of cocaine and heroin, apartment was barricaded and sparsely furnished, and defendants possessed unusually large amounts of cash). Moreover, he made no attempt to conceal the firearm from Deveney. See *Commonwealth* v. *McIntosh*, 78 Mass. App. Ct. 37, 41-42 (2010) (sufficient evidence of intent to control firearm where presence was supplemented by evidence that defendant ran to bedroom and proceeded directly to location under mattress where firearm was found); *Commonwealth* v. *Cotto*, 69 Mass. App. Ct. 589, 593 (2007) (following vehicle stop, defendant's actions of shoving feet under driver's seat where firearm ultimately discovered and staring at police officer during search support inference of intent constructively to possess firearm). Without additional inculpatory evidence linking the defendant's proprietary interest in his vehicle to the firearm in Alvarez's physical possession, the defendant's ownership of the vehicle had little bearing on his intent to control the firearm.

We have similar reservations regarding the defendant's operation of the vehicle. In *Commonwealth* v. *Jefferson*, 461 Mass. 821, 827-828 (2012), we held that the evidence adduced at trial was sufficient to support convictions of unlawful possession of a firearm based on a theory of joint constructive possession.[8] In that case, the driver sped away from police after being pulled over for a routine traffic violation. At the conclusion of the ensuing high-speed pursuit, police retraced the route of chase and discovered a firearm, which the passenger apparently had thrown from the vehicle. We concluded that the driver's decision to stop initially, only to speed away for the purpose of disposing of the firearm, evinced an intent to control the firearm. *Id.* Significantly, our decision did not rest solely on the defendant's status as the operator of the vehicle; rather, it was based on the defendant's decision to engage in a high-speed chase and the insight that this course of action provided into his probable intent.

Here, by contrast, the nature of the defendant's operation did

---

[8] We reversed the defendants' convictions on other grounds. *Commonwealth* v. *Jefferson*, 461 Mass. 821, 832 (2012).

not manifest any outward signs that the firearm belonged to him or that he intended to control the firearm. His vehicle was legally parked on the side of the road directly outside his girl friend's residence. The defendant made no attempt to evade Deveney or manipulate the vehicle in any way to dispose of the weapon. At best, the fact that the defendant was the operator of the vehicle served only to put him in the proximity of the firearm and did not provide evidentiary support for the proposition that he intended to control the firearm.

Our extended discussion of the defendant's ownership and operation of the vehicle stems from a concern that naked reliance on these factors comes "perilously close to endorsing guilt by presence at the scene of contraband, a concept we have disavowed." *Commonwealth* v. *Sespedes, supra* at 102. We do not intimate that ownership and operation are never relevant in assessing one's intent to exercise control over specific contraband. However, they are insufficient in the absence of additional evidence connecting the individual's ownership or operation to the contraband. To conclude otherwise would risk imposing a "new rule of strict liability for owner/operators of automobiles and premises regardless of what their actual intent to possess a weapon or contraband might be." *Romero, supra* at 807 (Trainor, J., dissenting). Such a standard of liability would potentially subject owners of property or vehicles to criminal prosecution by "simply tolerating the presence of a weapon or contraband within the limits of their proprietary interest." *Id.*

Our assessment regarding the defendant's intent to control the firearm is not altered after taking into consideration the defendant's proximity to the weapon, evidence more relevant in the circumstances of this case to whether the defendant had the *ability* to control the firearm, than his intention to exercise that control.

Because neither the defendant's ownership or operation nor his proximity to the firearm, alone or in combination, is sufficient to support his conviction, the sufficiency of the evidence rests on the location, time of the encounter, and behavior of the passengers. However, these considerations are inapposite. As the dissent in the Appeals Court decision correctly points out, *Romero, supra* at 810 (Trainor, J., dissenting), our decision in *Commonwealth* v. *Albano,* 373 Mass. 132, 134-136 (1977),

which relies heavily on circumstantial evidence relating to the time of night and location, was aimed at establishing the defendant's knowledge of the firearm, not his intent to exercise control and dominion over it. Thus, at least in the context of this case, the factual considerations cited by the Commonwealth shed little light on the defendant's intent. Accordingly, we conclude that the evidence was insufficient to support the defendant's conviction of unlawful possession of a firearm based on a theory of constructive possession.[9]

3. *Conclusion.* Because we conclude that the evidence was insufficient as a matter of law to prove beyond a reasonable doubt that the defendant unlawfully possessed a firearm in violation of G. L. c. 269, § 10 (*a*), we reverse his conviction and direct that a verdict of not guilty be entered.

*So ordered.*

---

[9]Although the jury were not instructed, nor was the defendant tried, on the related theory of joint venture, we note that that theory of liability is equally inapplicable in this case. Despite the Appeals Court's suggestion that the occupants might be engaged in "surreptitious criminal activity," *Commonwealth* v. *Romero*, 80 Mass. App. Ct. 791, 798 (2011), there is no evidence to support such a conclusion. *Commonwealth* v. *Zanetti*, 454 Mass. 449, 468 (2009) (to establish joint venture liability Commonwealth required to prove beyond reasonable doubt that defendant "knowingly participated in the commission of the crime charged, with the intent required for that offense").