NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-830                                                    Appeals Court

COMMONWEALTH  vs.  GEOVANNI RUANO.

No. 13-P-830.

Essex.      October 14, 2014. - February 18, 2015.

Present: Cypher, Grainger, & Maldonado, JJ.

Intimidation of Witness. Witness, Intimidation. Evidence,
     Intent. Intent.

Indictment found and returned in the Superior Court
Department on May 25, 2011.

The case was tried before Howard J. Whitehead, J.

Patricia A. DeJuneas for the defendant.
Catherine Langevin Semel, Assistant District Attorney, for
the Commonwealth.

GRAINGER, J. The defendant appeals from a conviction of

influencing a witness by intimidation, G. L. c. 268, § 13B, by a

jury of the Superior Court.[1]  He asserts insufficiency of the evidence on appeal.

Factual background.  As relevant to the issue on appeal, the jury could have found from the evidence introduced by the Commonwealth[2] that on July 31, 2010, the defendant and the witness had an altercation.  While the underlying reason for the altercation remains unclear from the record, the Commonwealth's evidence was that the defendant entirely lost control of his temper when he believed the witness's motor vehicle was blocking his sport utility vehicle (SUV), that the defendant screamed obscenities at the witness and informed the witness that he was a police officer, and, finally, that the defendant shoved the witness with his SUV until the witness was on the SUV's hood.  The jury found the defendant not guilty of all charges stemming from the incident.

The next day, and after the defendant ascertained that the witness had reported the incident to police, the defendant's girl friend, who lived across the street from the witness, appeared at the witness's door and inquired whether the defendant could come over to apologize.  The witness agreed, but

_____

[1] Other charges, including assault and battery and assault and battery by means of a dangerous weapon, resulted in not guilty verdicts.

[2] We do not include the evidence introduced by the defendant in our consideration of the sufficiency of the Commonwealth's case.

asked that the visit not take place for twenty minutes. The defendant waited for a period of time and then appeared with his girl friend, whereupon they were invited by the witness into his kitchen. During the ensuing conversation the defendant and the witness sat at opposite ends of the kitchen table. In addition to the defendant's girl friend, the witness's roommate was also present.

In that conversation, the defendant asked the witness to recant and again mentioned that he was a police officer, this time stating that he had been one for fifteen years. The witness testified that the defendant stated that his superiors would "burn him," that he was in danger of losing his job and his pension. He also told the witness about his two daughters, one of whom was in college. In asking the witness to recant, the defendant stated that the witness "could make 200 plus friends and . . . could have the key to the city . . . and everything could be good and if [he] got into trouble [he] could get out of trouble."[3] The witness testified that the defendant did not apologize explicitly for his behavior of the night before; however, according to the roommate the defendant "apologized again and again" and also said he had had "a bad

---

[3] The witness's roommate testified that he understood the "200 new friends" to refer to the Lynn police department. It is undisputed that there are approximately 200 police officers in the Lynn police department.

night and kind of overreacted."  The meeting ended with a "shake of the hand."

Later that same day the defendant and his girl friend returned to the witness's home to "tie up loose ends" and to "get the story straight."  The witness invited them into his home for a second time,[4] and the defendant coached him to say he had been in an argument with his girl friend and that he was just as responsible for the incident as the defendant, if not more so.  The defendant also coached the witness how to answer investigators' questions, e.g., with short, one-word answers. The witness agreed to these requests, and the meeting ended with the defendant saying he was "glad" they met again and "felt more competent [sic]."  The second meeting was brief.  The witness described the defendant as "in and out, to the point."

The next day, the witness did in fact change his story when he spoke with police on the telephone.[5]  The witness told the police that he suffered from anxiety and that his medical state had played a large role in the altercation.  This story,

---

[4] The witness's roommate, who was again present, recollected that this second meeting took place in the driveway, not inside the house.  The roommate testified that at this second meeting the witness appeared to be "[s]till a little nervous but not as nervous as the first conversation" and that the defendant seemed "relieved."

[5] The evidence suggests that this telephone conversation was initiated by the police as a follow-up to their investigation of the confrontation.

according to the witness's testimony, was not the same story the defendant had coached him to tell. Thereafter, when officers visited the witness at his home, the witness was reluctant to speak with them and asked that they speak elsewhere. Officers testified that during this exchange they saw the defendant's SUV parked at his girl friend's house in the driveway across the street. Once at the police station, the witness said his original report was correct and recounted the meetings with the defendant.

Discussion. A conviction under G. L. c. 268, § 13B(1)(c)(i), as amended through St. 2006, c. 48, § 3, requires that the defendant "directly or indirectly, willfully . . . misleads, intimidates or harasses another person who is . . . a witness . . . at any stage of a criminal investigation."[6] Intimidation requires "putting a person in fear for the purpose of influencing his or her conduct." Commonwealth v. McCreary, 45 Mass. App. Ct. 797, 799 (1998). "[A]n 'action does not need to be overtly threatening to fall within the meaning of intimidation.'" Commonwealth v. Cohen (No. 1), 456 Mass. 94,

---

[6] Although the indictment tracks the statutory language ("misleads, intimidates or harasses"), the Commonwealth's case was presented exclusively as involving either a promise of something of value, see G. L. c. 268, § 13B(1)(b), or intimidation. Thus the only issue on appeal is whether the defendant's conduct supports a conviction of intimidation. It is undisputed that this case involves "a witness . . . at any stage of a criminal investigation."

124 (2010), quoting from Commonwealth v. Casiano, 70 Mass. App. Ct. 705, 708 (2007). "The assessment whether the defendant made a threat is not confined to a technical analysis of the precise words uttered." Commonwealth v. Sholley, 432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001). Rather, "[a] fact finder may evaluate the circumstances in which the statement was made, including its timing, to determine whether the defendant in fact intended to intimidate the victim." Commonwealth v. King, 69 Mass. App. Ct. 113, 120 (2007), citing Commonwealth v. Robinson, 444 Mass. 102, 109 (2005).

In reviewing the denial of a motion for a required finding of not guilty,[7] we "look at the evidence in the light most favorable to the Commonwealth to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Belle Isle, 44 Mass. App. Ct. 226, 229 (1998), citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

While the Commonwealth's evidence was more than sufficient to support a conviction under G. L. c. 268 § 13B(1)(b) ("Whoever, directly or indirectly, willfully . . . conveys a gift, offer or promise of anything of value"), the jury did not

---

[7] The claim was properly preserved at trial.

convict the defendant on that basis.[8] The Commonwealth's theory in support of a conviction under § 13B(1)(c) (intimidation or threat) was that the offer of 200 new friends could be interpreted as a simultaneous threat that these "new friends" would necessarily become "new enemies" if the witness failed to recant. It is thus necessary to conclude that the defendant's reference to "friends" allowed the jury, acting reasonably, to infer that the evidence showed beyond a reasonable doubt that he was simultaneously making an allusion to "enemies," couched in the alternative.

We do not disagree that there are cases in which such an inference could be supported by evidence, including circumstantial evidence. Although we consider this to be a close case, we conclude that evidence sufficient for the jury to find intimidation beyond a reasonable doubt is lacking. The prosecutor presented testimony both from the witness and his roommate, who was in attendance during the entirety of the interactions between the defendant and the witness on the day

---

[8] We do not infer anything from the jury's failure to check the special question form's box labeled "offering something of value" except a failure to convict on that basis. See Commonwealth v. Carlino, 449 Mass. 71, 79-80 (2007) (jury's failure to check a box on special verdict form may be deemed neither a conviction nor an acquittal by "accident or supposition" for purposes of double jeopardy). Our task is not to surmise the jury's possible rationale, but rather to evaluate whether the evidence was legally sufficient to support a conviction of intimidation.

following the confrontation.  The Commonwealth's witnesses, however, presented no evidence of gestures, tone of voice, body language or even physical proximity from which a rational fact finder could infer that the words spoken by the defendant were used, beyond a reasonable doubt, to connote their opposite and thereby convey a threat.  The Commonwealth's evidence demonstrated the following:  The defendant sent his girlfriend to ask permission to visit the witness.  The defendant was asked to wait for twenty minutes before arriving, which he did.  He sat at the opposite end of the table from the witness.  His references to his status as a police officer were made in explicit reference to his own exposure to job-related consequences, and not to consequences the witness would face were he to refuse to cooperate with the defendant.  The defendant explicitly attempted to humanize the impression he made on the witness by referring to his daughters.

The Commonwealth also argues that in addition to the implication of "enemies" to be derived from the word "friends," the defendant's reference to serving in the gang unit at the police force was evidence of intimidation.[9]  That reference, part of a stream of unrelated remarks inserted between concern for his pension and the fact that his daughters were in college, is

---

[9] The witness testified that the defendant said that he was a "fifteen year veteran, being on the Gang Unit," and asked the witness to "keep it out of court."

devoid of any suggestion that members of any gang or gangs were available to do the defendant's bidding, and is insufficient without additional context to support the Commonwealth's interpretation beyond a reasonable doubt.

Although the jury acquitted the defendant of all charges stemming from the original confrontation on the preceding evening, the Commonwealth also asserts that the jury could infer witness intimidation from the evidence of the defendant's previous aggressive behavior.  While the Commonwealth is entitled to draw on that evidence notwithstanding the underlying acquittals, in this case it does not support a conviction of intimidation beyond a reasonable doubt, standing in stark contrast to the Commonwealth's evidence of the defendant's continuous portrayal of apprehension and regret[10] on the day following his single altercation with the witness.[11]

---

[10] On cross-examination the Commonwealth's witness, the roommate, testified that the defendant "apologized again and again."  Our cases do not specify whether testimony on cross-examination of the Commonwealth's witness is considered part of the Commonwealth's case-in-chief for purposes of a directed verdict, or is only to be included in the calculus of adequacy in a reappraisal of all the evidence after the defendant has rested.  See, e.g., Commonwealth v. Kelley, 370 Mass. 147, 150 n.1 (1976).  Even, however, if we do not consider this portion of the roommate's testimony at all, it leaves the record devoid of any evidence supporting an inference of a threatening or hostile demeanor.

[11] Unlike Commonwealth v. Perez, 460 Mass. 683, 703-704 (2011), this is not a case in which the record contains a history of abuse regularly inflicted by the defendant on the

"We have reviewed the entire record carefully on the law and the facts."  Commonwealth v. Latimore, 378 Mass. at 679. While the test of sufficiency encountered in our cases usually involves a claimed lack of evidence available to be viewed "in the light most favorable to the prosecution," this is a different and less frequent circumstance in which the remaining requirement of the Latimore test -- satisfying "a rational trier of fact . . . beyond a reasonable doubt" -- has not been met. Id. at 677-678.  Recent cases recognizing that Latimore incorporates this condition include Commonwealth v. McCauliff, 461 Mass. 635 (2012).  The Supreme Judicial Court ruled in McCauliff that conflicting inferences of equal likelihood derived from evidence that the defendant made a false statement, viewed under the Latimore standard, "do not provide proof beyond a reasonable doubt" that the falsehoods were knowingly made. Id. at 641.  This applies with equal force to the Commonwealth's claim that the defendant's reference to "friends" was just as likely intended to mean "enemies."  See id. at 642.

In Commonwealth v. Lee, 460 Mass. 64 (2011), the Supreme Judicial Court ruled that evidence of participation as a joint venturer in an assault and battery, viewed in the light most favorable to the Commonwealth "cannot bear the weight of proof

witness such that the witness could anticipate it would be continued.

beyond a reasonable doubt" to infer premeditated intent, even if proven with respect to a codefendant.  Id. at 71, quoting from Commonwealth v. Rodriguez, 456 Mass. 578, 583 (2010).  Another recent case turning on this latter portion of the Latimore test is Commonwealth v. Greene, 461 Mass. 1011 (2012). In Greene the court reversed a conviction for trespass, citing Latimore, because a police officer's hearsay testimony, albeit introduced without objection, was insufficient to warrant a finding beyond a reasonable doubt that the defendant had been ordered to vacate property by a person with authority to do so.  Id. at 1012.  See Commonwealth v. Oyewole, 470 Mass. 1015, 1016 (2014) (defendant's presence at a hearing at which his driver's license was suspended did not allow a jury to find he received notice of the suspension beyond a reasonable doubt under Latimore).

Finally, in Commonwealth v. Romero, 464 Mass. 648 (2013), the Supreme Judicial Court reversed the defendant's conviction, citing Latimore, where the Commonwealth's evidence, including evidence that a firearm was in plain view and titled to the defendant, failed to support constructive possession of a firearm beyond a reasonable doubt as the evidence "shed little light on the defendant's intent."  Id. at 652, 659.  As in Romero, we conclude that on this record the Commonwealth's evidence sheds insufficient light on the defendant's intent to intimidate.

As stated, our task is to determine whether a rational trier of fact can find the essential element of intimidation beyond a reasonable doubt, even when all the evidence is viewed in the light most favorable to the prosecution.  While a rational trier of fact could certainly conclude beyond a reasonable doubt that the defendant intended to influence the witness's testimony, the Commonwealth's evidence did not allow the jury to find beyond a reasonable doubt that he was speaking in code, and intended to influence the testimony by intimidation.

Judgment reversed.

Verdict set aside.

Judgment shall enter for the defendant.