NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-336

COMMONWEALTH

vs.

DEREK I. REYES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In February 2022, a Superior Court jury found the defendant guilty of unlawful possession of a firearm, G. L. c. 269, § 10 (a), and unlawful possession of ammunition, G. L. c. 269, § 10 (h), but acquitted him of home invasion and other charges stemming from the same incident. On appeal, the defendant argues that (1) there was insufficient evidence that he possessed a firearm or ammunition; (2) under Commonwealth v. Guardado, 491 Mass. 666 (2023), S.C., 493 Mass. 1 (2023), cert. denied, U.S. Supreme Ct., No. 23-886 (June 24, 2024), the judge failed to instruct the jury on the Commonwealth's burden of proving the defendant's lack of licensure in connection with the possession charges; and (3) the Commonwealth improperly elicited

hearsay testimony of a statement of identification. Concluding that there was sufficient evidence and that the other claimed errors do not entitle the defendant to any relief, we affirm.

Background. The jury could have found that a little after midnight on September 17, 2015, Christopher Muello called 911 to report that a man wearing a red and black, horned devil mask had pointed a gun at him, entered his home, struck him with the gun, and then pursued his girlfriend, Jennifer Berube, who was also in the home. Shrewsbury police Officer Paul Alward responded to the call minutes later and spotted the defendant moving toward him on foot, carrying a bag with what appeared to be a mask protruding out of it. The defendant was stopped and arrested approximately 750 feet from the victims' home, near the end of their long driveway. A search of the defendant's bag revealed a red and black, horned devil mask, as well as tape, gloves, and a Captain America skullcap. Officer Timothy Finacom searched the immediate area and found a firearm and Berube's cell phone under a tree at the end of the driveway. Some months after the arrest, Berube and Muello informed police that Berube knew the intruder as a man named "Derek."

The defendant was indicted on six counts: armed home invasion (G. L. c. 265, § 18C); armed robbery (G. L. c. 265, § 17); assault and battery by means of a dangerous weapon (ABDW) (G. L. c. 265, § 15A [b]); unlawful possession of a firearm as an armed

2

career criminal (G. L. c. 269, § 10 [a]); unlawful possession of a loaded firearm (G. L. c. 269, § 10 [n]); and unlawful possession of ammunition as an armed career criminal (G. L. c. 269, § 10 [h]).  See generally G. L. c. 269, § 10G.  At trial, Muello testified, but Berube did not.  The jury also heard from investigating officers Alward and Finacom, among other law enforcement witnesses.  The defendant was found not guilty of armed home invasion and ABDW, and a required finding of not guilty was entered on the armed robbery charge, but he was convicted of the three firearm and ammunition charges.  After trial, the Commonwealth filed a nolle prosequi of the loaded firearm charge under § 10 (n), as duplicative of the other firearm and ammunition charges, and the defendant pleaded guilty to the remaining elements of the armed career criminal indictments.

Discussion.  a.  Sufficiency of the evidence.  The defendant first argues that there was insufficient evidence that he possessed the loaded firearm found near the victims' driveway.  We review to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v.

Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).

"To convict an individual of unlawful possession of a firearm [or ammunition], the Commonwealth must prove, beyond a reasonable doubt, that the defendant knowingly possessed an object, and that the object met the legal requirements of being a firearm [or ammunition] as defined in G. L. c. 140, § 121." Commonwealth v. Bonner, 489 Mass. 268, 287 (2022). Actual or constructive possession "may be established by circumstantial evidence, and the inferences that can be drawn therefrom" (citation omitted). Commonwealth v. Romero, 464 Mass. 648, 653 (2013).

In this case, there was sufficient evidence that the defendant knowingly and actually possessed a loaded firearm while entering the victims' residence. Muello testified that a man wearing a devil mask entered his home brandishing a black handgun. He also testified that the intruder pointed the firearm at him and ordered him to get on the ground. When the defendant was stopped by police only minutes after the 911 call and approximately 750 feet away from the victims' house, he matched the description that Muello had given in the 911 call. He was carrying a devil mask matching Muello's description, as well as several other items commonly carried by burglars. There was also evidence that the defendant was sweaty, out of breath,

4

and physically exhausted when he was apprehended, permitting the inference that he was attempting to run away from the victims' house.

A black handgun containing eight bullets was found underneath a tree next to the victims' driveway, seventy-two feet at most from where the defendant was stopped. The firearm was sitting on top of a mulch bed a few feet away from a cell phone identified as Berube's phone at the time of the incident, permitting the inference that the phone and the gun had been disposed of together. Photographs of the firearm in situ show a few small pieces of mulch on its handle, but nothing else suggesting that it had been there for any substantial period of time.

From this evidence, the jury could reasonably infer that the defendant had actually possessed the black firearm and had tossed it under the tree when fleeing the scene. See Bonner, 489 Mass. at 287-288 (actual possession where evidence showed defendant used firearm during crime and discarded it during flight); Commonwealth v. Jefferson, 461 Mass. 821, 826 (2012) (evidence of possession sufficient where jury could infer that defendants discarded firearm during flight).

The jury could also infer from the defendant's actions that he knew the firearm contained ammunition. See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 801 (2019) ("It is certainly a

5

reasonable inference . . . that a person who plans . . . an assault on a victim by means of a handgun . . . would know whether [it was] loaded before carrying out the assault"); Commonwealth v. Mitchell, 95 Mass. App. Ct. 406, 419 (2019) ("It is reasonable to infer that one who brings a gun to a location knows whether or not it is loaded"); Commonwealth v. Resende, 94 Mass. App. Ct. 194, 201 (2018) (factors indicating knowledge of ammunition include the fact "that the defendant was alone in the nighttime" and "that moments before the police arrived, the defendant had been threatening someone and made reference to a firearm").

The defendant points to the jury's decision to acquit him of the home invasion and ABDW charges to argue that the evidence of his identity as the intruder was insufficient. This argument fails for several reasons. First, the jury's verdict has no bearing on whether the evidence was legally sufficient -- indeed, a jury may acquit even when sufficient evidence has been presented. See Commonwealth v. Pauley, 368 Mass. 286, 291 (1975). Second, even if the jury's verdict were indicative of sufficiency, we do not know which parts of the Commonwealth's case the jury accepted or rejected, and "[i]t is not open for us to speculate about the jury's internal decision-making process." Commonwealth v. Rogers, 8 Mass. App. Ct. 646, 652 (1979). Last, "mere inconsistency in verdicts, one of which is an acquittal,

will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury."  Commonwealth v. Scott, 355 Mass. 471, 475 (1969).

b.  Jury instructions.  Because this case was pending on direct review when the United States Supreme Court decided New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 11 (2022), in June 2022, we must conclude that it was error not to instruct the jury that it must find beyond a reasonable doubt that the defendant lacked a firearms license or firearm identification card (FID) to convict the defendant under G. L. c. 269, § 10 (a) or § 10 (h), respectively.  See Guardado, 491 Mass. at 691, 694.  Having so concluded, "[t]he remaining question is whether the error was harmless beyond a reasonable doubt" (citation omitted).  Commonwealth v. Bookman, 492 Mass. 396, 401 (2023).

In Bookman, 492 Mass. at 401, the court concluded that omission of the licensure instruction -- mandated post hoc by the holding in Guardado, as it was here -- was harmless beyond a reasonable doubt where an officer testified that neither the defendant nor his codefendant had a firearm license and there was "nothing in the record to suggest that the defendant disputed this testimony, or that the officer's credibility was in question."  Here, Officer Finacom testified that he conducted a licensure check and that the defendant did not have a license

7

to carry a firearm or an FID.[1]  A thorough review of the record also reveals no attempt by the defense to dispute this testimony or undermine Finacom's credibility on this point of fact.[2]  Thus, as in Bookman, we conclude that the omission was harmless beyond a reasonable doubt.

   c.  Hearsay statement of identification.  During cross-examination, defense counsel questioned Muello about why he and Berube waited several months to inform the police that Berube knew who the intruder was.  On redirect, to rehabilitate Muello, the Commonwealth permissibly elicited his testimony about the reason for the delay -- that Berube had previously bought drugs

---

[1] We reject the defendant's claim that Finacom's testimony was inadmissible hearsay.  Testimony that a diligent search failed to disclose a public record is admissible in evidence to prove that the record or statement does not exist.  See Mass. G. Evid. § 803(10)(A) (2024).

[2] The defendant argues that Finacom's credibility was brought into question when he was cross-examined about the distance between the firearm and the site of the arrest (a matter of arguable importance) and about whether and how Berube's cell phone was damaged after it was taken into evidence (a matter of no apparent importance).  After reviewing the transcript, we are unpersuaded that the cross-examination did any appreciable damage to Finacom's credibility.  Indeed, in the defendant's reply brief, he affirmatively argues that Finacom's testimony about the location of the firearm should be credited.  Thus, where the defendant had the opportunity to cross-examine on another issue of little apparent importance at the time (Finacom's licensure testimony), yet did not even attempt to do so, we see "nothing in the record to suggest . . . that the officer's credibility was in question" on the licensure issue or any other issue.  Bookman, 492 Mass. at 401.

from the intruder and had not paid a debt.  See Commonwealth v. Holliday, 450 Mass. 794, 815, cert. denied sub nom. Mooltrey v. Massachusetts, 555 U.S. 947 (2008); Commonwealth v. Errington, 390 Mass. 875, 880 (1984) (emphasizing that "[a] witness who has been impeached by his testimony that he was silent in circumstances naturally calling for expression may explain why he was silent").  The Commonwealth went further, however, by eliciting portions of Berube's statement to Muello that amounted to hearsay statements of identification.[3]  As the defendant argues on appeal, this was error, but it is one that the defendant waived by failing to object.  See Commonwealth v. Herndon, 475 Mass. 324, 334 (2016) ("it is appropriate to require that the Commonwealth inquire directly of the alleged identifying witness about the alleged prior identification before introducing evidence of that alleged identification through a third-party witness").  Thus, we review the record to determine if the inadmissible statement posed a substantial risk of a miscarriage of justice.  See Commonwealth v. LeFave, 430 Mass. 169, 173-174 (1999).  Given the strong circumstantial evidence that the defendant was the intruder, as discussed supra, we conclude that it did not.  See id. at 174 ("the

---

[3] This included Berube's statement that she had previous dealings not merely with the intruder but with "the [d]efendant," and that the intruder's name was "Derek."

9

substantial risk issue calls for us to decide if we have a serious doubt whether the result of the trial might have been different had the error not been made").

Judgments affirmed.

By the Court (Blake, Neyman & Sacks, JJ.[4]),

Clerk

Entered:  August 29, 2024.

---

[4] The panelists are listed in order of seniority.