## COMMONWEALTH *vs.* JAMES T. NAMEY.

No. 05-P-1084.

Plymouth. May 9, 2006. - August 10, 2006.

Present: KANTROWITZ, BERRY, & DOERFER, JJ.

*Receiving Stolen Goods. Motor Vehicle,* Receiving stolen motor vehicle.
*Evidence,* Constructive possession. *Possession of Burglarious Instruments.*

This court declined to add to the elements of the crime of receiving stolen
    property, G. L. c. 266, § 60, a requirement that the Commonwealth prove
    the specific time and place that the receipt of the stolen property occurred
    when proceeding on a theory of joint venture. [97-98]
At the trial of a criminal complaint charging receipt of stolen property, G. L.
    c. 266, § 60, the evidence was sufficient to show that the defendant knew
    that the motor vehicle in which he sat was, in fact, stolen, and that the
    defendant, as a passenger, had sufficient dominion over and control of the
    vehicle to be considered in possession of it. [98-101]
The evidence at a criminal trial was sufficient to convict the defendant of pos-
    session of burglarious instruments. [101-102]

COMPLAINT received and sworn to in the Hingham Division of
the District Court Department on February 12, 2004.

The case was tried before *Ronald F. Moynahan,* J.

*Brad P. Bennion* (*Dana Alan Curhan* with him) for the
defendant.

*Gail M. McKenna,* Assistant District Attorney, for the
Commonwealth.

KANTROWITZ, J. Did the passenger have knowledge that the
motor vehicle he occupied was stolen and sufficient dominion
and control to consider him in possession of it? We hold that in
the circumstances of this case, the jury could find that he did.

The defendant, James Namey, was convicted as a joint venturer
of receiving stolen property over $250 in value, G. L. c. 266,
§ 60, and possession of burglarious instruments, G. L. c. 266,

§ 49.[1] He appeals, claiming that (1) the "Commonwealth never established or presented evidence that the defendant was present at the scene of the crime of receipt"; (2) receiving stolen property was not proved "because the mere presence as a front seat passenger in a stolen car does not satisfy the statutory requirement of knowing possession"; and (3) possession of burglarious instruments was also not sufficiently proved "where the only evidence of such was flight and concealment from police and [there was] no evidence that [the defendant] possessed the tools." We affirm.

*Facts.* On January 10, 2004, Philip Goddard, the owner of a black 1995 Toyota Camry automobile in better than average condition, parked and locked his vehicle at a metered parking space in Boston's Back Bay neighborhood. When he returned about one hour later, the car was gone.

At trial, Officer Galvin of the Hingham police department testified that approximately one month later, on February 12, 2004, around 5:00 P.M., he observed a black Toyota Camry traveling southbound on Route 228 at the intersection of Main Street (Route 228) and Friend Street in Hingham. Glancing at the car, he saw the driver, an African-American male with a shaved head, and one passenger, a dark-haired Caucasian male whom he later identified as the defendant, duck down upon spotting the officer. As a result of these actions, the officer ran a computerized check on the license plate and learned of the car's stolen status. Following the car, he radioed ahead to Officer Foss for assistance.

Officer Foss of the Hingham police department testified that after he received a call from Officer Galvin, he observed the black Toyota Camry traveling southbound on Route 228 and pulled behind it, with his blue lights and siren activated. The car came to a stop, but as soon as Officer Foss began to leave his cruiser, with his gun drawn, the car sped off. Officer Foss jumped back into his cruiser and pursued the speeding Camry, which reached speeds of eighty-five miles per hour notwithstanding the heavy traffic conditions. After traveling southbound on Route 228 for about two and one-half miles, dangerously

---

[1]The defendant was found not guilty of possessing a hypodermic needle, G. L. c. 94C, § 27(*a*). A fourth charge, possession of heroin, G. L. c. 94C, § 34, was dismissed prior to trial.

passing other cars by crossing into oncoming traffic, the car turned right onto Route 53. Out of public safety concerns, Officer Foss pursued the car only for about one mile before slowing down and keeping the car within sight. Officer Foss observed that the vehicle, once on Route 53, again increased its speed. It struck another car, then took a right turn and continued down Gardner Street. Officer Foss stopped his pursuit to render assistance to the person whose car had been hit.

Meanwhile, Officer Galvin picked up the chase, observing the vehicle on Gardner Street in Hingham where it was coming at him. After the car passed him, Officer Galvin reversed direction and, shortly thereafter, found the vehicle crashed into a tree next to a house at 111 Gardner Street. When he arrived, the occupants had fled the scene.

The Camry was heavily damaged at the front end with both airbags deployed. Police observation revealed that the vehicle's ignition had been "popped" and that the door lock on the passenger side was "either out or damaged." A photograph taken at the scene and admitted in evidence depicted a hole, where the ignition should be, in the car's dashboard.

A canine unit of the police arrived and began searching the immediate area. The police dog tracked a scent into the wooded area behind the house. After proceeding for about one-half mile along a clear-cut path in the woods, the dog turned to an area covered by leaves and trees. A man jumped up and began running away. After police officers ordered him to stop, he continued running, finally obeying their command twenty-five to thirty feet later. The man was arrested and Officer Galvin identified him as the passenger he had observed in the black Camry.

Officer Galvin further testified that the police found several hypodermic syringes on the passenger side floor of the vehicle as well as more hypodermic syringes in the trunk of the car. Also discovered was a map of the local area in the front seat, as well as a black wig, a white ski hat, and several tools, including screwdrivers, pliers, a flashlight, and a dent puller, on the rear seat behind the front passenger side.[2]

[2]The owner of the car testified that when he left the car, there were no hypodermic syringes, dent puller, black wig, or ski hat in the car. He was not

The defendant testified that the driver, Mike Kimblough,[3] whom he had known "for a while," picked him up in Boston's South End neighborhood during the afternoon of February 12, 2004, to drive to a party on Cape Cod.[4] The defendant said that when he entered the car, he did not notice anything wrong with the passenger door lock. He further denied seeing a hole in place of the car's ignition and said that the area was covered with a bandana, making it impossible for him to see. As to any objects located in the back seat, he thought they were the driver's personal items and did not pay any attention to them. The defendant testified that he did not realize the car was stolen until the driver so informed him when they were initially stopped by the police.[5] Notwithstanding this information, the defendant did not attempt to leave the car when it first came to a stop; he testified he did not have time to do so.

*Receiving stolen property.* General Laws c. 266, § 60, provides in pertinent part that "[w]hoever buys, receives or aids in the concealment of stolen . . . property, knowing it to have been stolen . . . shall . . . be punished." In order to prove the defendant guilty of receiving stolen property, the Commonwealth must prove three elements beyond a reasonable doubt: (1) "That the property in question was stolen"; (2) "That the defendant knew that the property had been stolen"; and (3) "That the defendant knowingly had the stolen property in his (her) possession." Model Jury Instructions for Use in the District Court, Instruction 5.32 (1997). See *Commonwealth* v. *Yourawski*, 384 Mass. 386, 387 (1981); *Commonwealth* v. *Cromwell*, 53 Mass. App. Ct. 662, 664 (2002).

The defendant seeks to add another element, contending that "[t]he unlawful receipt of stolen property is a single, specific act occurring at a specific time and place," which the Commonwealth must prove when proceeding on a joint venture theory. Thus, he further argues, he cannot be convicted of receiving stolen property as a joint venturer because that would

asked about the map, nor apparently about the other tools.

[3]The record does not reveal whether he was ever apprehended.

[4]Apparently the defendant was picked up not far from where the car was stolen the month before.

[5]On cross-examination, the defendant said that he learned that the car was stolen just *before* they were stopped by the police.

require him to be present at the scene of the crime, and the Commonwealth failed to prove that he was present when the principal received the stolen car.

We decline the invitation to expand upon the elements of the crime. See *Commonwealth* v. *Cromwell*, 53 Mass. App. Ct. at 664-666 (declining to add proof of ownership to elements of receiving stolen property).

*Knowledge and possession (receiving stolen property).* The defendant next contends that the Commonwealth did not present sufficient evidence that he knowingly possessed the stolen motor vehicle.[6]

"The defendant's presence as a passenger in the stolen car [does] not alone satisfy the statutory requirement of knowing possession of the vehicle . . . , but his presence supplemented by other incriminating evidence justified submission of the issue to the jury." *Commonwealth* v. *Johnson*, 7 Mass. App. Ct. 191, 193 (1979). See *Commonwealth* v. *Johnson*, 6 Mass. App. Ct. 956, 957 (1978).[7]

The evidence, when viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Platt*, 440 Mass. 396, 400 (2003), reveals the following: (1) the car's ignition had been "popped," leaving a hole in the dashboard; (2) the door lock on the front passenger side where the defendant sat was "either out or damaged"; (3) visibly located in the back seat of the car were two disguises, a dent puller, and other tools, including screwdrivers and pliers; (4) in the front seat of the car was a map of the local area.[8]

From the significant damage to the car, a fact finder could

---

[6]For the purposes of this discussion, we need not distinguish between the charges of receiving stolen property, G. L. c. 266, § 60, and receiving a stolen motor vehicle, G. L. c. 266, § 28.

[7]"[P]ossession need not be exclusive. It may be joint and constructive, and it may be proved by circumstantial evidence." *Commonwealth* v. *Brown*, 50 Mass. App. Ct. 253, 257 (2000), quoting from *Commonwealth* v. *Beverly*, 389 Mass. 866, 870 (1983). See *Commonwealth* v. *Hunt*, 50 Mass. App. Ct. 565, 569 (2000). Actual and constructive possession, however, require "knowledge plus ability and intention to control." *Commonwealth* v. *Fernandez*, 48 Mass. App. Ct. 530, 532 (2000). See *Commonwealth* v. *Darnell D.*, 445 Mass. 670, 673 (2005).

[8]The defendant testified during his own case that, inter alia, he had known the driver of the car "for a while." We do not consider the defendant's

find, under these circumstances, that the defendant possessed sufficient knowledge that the car in which he was seated was, in fact, stolen. See *Commissioner of Pub. Safety* v. *Treadway*, 368 Mass. 155, 160 (1975) (requirement of knowledge for receiving stolen goods satisfied by evidence that defendant believed or suspected that goods were stolen); *Commonwealth* v. *Dellamano*, 393 Mass. 132, 138 (1984), quoting from *Commonwealth* v. *Boris*, 317 Mass. 309, 315 (1944) ("the attending circumstances known to a defendant are important as tending to show that he possessed knowledge that the goods had been stolen, *or at least as inducing a belief that they had been stolen*"); *Commonwealth* v. *Youngworth*, 55 Mass. App. Ct. 30, 34-35 (2002), cert. denied, 538 U.S. 1064 (2003) (knowledge prong supported by the fact that stolen motor vehicle that had been in defendant's garage for at least four days bore hole in place of ignition).

Next, we must determine whether the defendant, as a passenger, had constructive possession of the car; that is, whether the defendant had sufficient dominion and control of the vehicle to be considered to be in possession of it. Possession has been found where the defendant, as a passenger, uses the motor vehicle with others in conjunction with committing a crime, supporting the inference that he has some ability and intent to control the manner in which the car is being used. Thus, in *Commonwealth* v. *Johnson*, 7 Mass. App. Ct. at 193, there was sufficient evidence that the passenger had dominion and control of a motor vehicle when he and the driver fled in it after an aborted housebreak. In *Commonwealth* v. *Subilosky*, 352 Mass. 153, 166 (1967), all four occupants of a stolen vehicle used in a bank robbery were found to be in possession of it for purposes of proving larceny of a motor vehicle.

Conversely, "[a] person's presence in a vehicle as a passenger, without more, is insufficient to prove that he possessed the vehicle." *Commonwealth* v. *Darnell D.*, 445 Mass. 670, 673 (2005), citing *Commonwealth* v. *Campbell*, 60 Mass. App. Ct. 215, 217 (2003). In *Darnell D.*, it was unknown which seat the

testimony in our evaluation of his motion for a required finding at the conclusion of the Commonwealth's case-in-chief. See *Commonwealth* v. *Perry*, 432 Mass. 214, 215 (2000).

defendant occupied in the car that made a number of turns after the defendant had turned around and looked at a police officer who was following the car in an unmarked vehicle. The evidence was insufficient to establish the defendant's possession of the stolen motor vehicle. *Id.* at 673-674. See *Commonwealth v. Campbell*, 60 Mass. App. Ct. at 217 (evidence lacking as to how the defendants came to be in car, how long they had been there, and what their relationship with driver was; also, no evidence that car's keys were in their possession).

In the present case, there was evidence that the defendant was more than a mere passenger. The facts were that two disguises (one for each occupant) were located in the back seat of the car, along with a number of tools, one of which — the dent puller — was of burglarious character[9]; and a map of the area was located on the front seat. An additional factor is the similarity of objects (hypodermic needles) found at the feet of the defendant and also in the car's trunk, demonstrating some degree of access to and control over the car by the passenger.

In addition, there was an abundance of consciousness of guilt evidence. "Actions and statements that indicate a defendant's consciousness of guilt, together with other evidence, are sufficient to prove his guilt." *Commonwealth v. Doucette*, 408 Mass. 454, 461 (1990), citing *Commonwealth v. Cordle*, 404 Mass. 733, 741 (1989). See *Commonwealth v. Montecalvo*, 367 Mass. 46, 55 (1975). See also *Commonwealth v. Darnell D.*, 445 Mass. at 674 ("a conviction may not be based on consciousness of guilt alone").

First, Officer Galvin testified that both the driver and the passenger ducked down after looking at him from the passing car. Second, the defendant did not attempt to leave the car after it came to a stop for Officer Foss and before speeding off again. Third, after the car crashed into a tree, the defendant fled and hid in the woods. Fourth, after the police discovered him, he again ran away for another twenty-five to thirty feet, despite the police officer's order to stop.

It was not a leap of conjecture to conclude on the basis of all

---

[9]One wonders who, other than an automobile repair worker or a criminal, possesses a dent puller. See *Commonwealth v. Dellinger*, 10 Mass. App. Ct. 549, 561 (1980) (dent puller a "less innocent" tool).

of these factors that the driver and passenger of the stolen motor vehicle were in league together, staking out the area in preparation for committing another crime, thus placing them closer to the paradigm of *Johnson* and *Subilosky* than of *Darnell D.* and *Campbell*. As such, the evidence was sufficient to allow a rational trier of fact to find that the defendant knowingly possessed the stolen motor vehicle.[10]

*Knowledge (possession of burglarious instruments).* The defendant makes a similar argument concerning the sufficiency of the evidence with regard to the charge of possession of burglarious instruments; namely, that the sole evidence against him was his flight and concealment. As already noted, consciousness of guilt is insufficient by itself to convict. See *Commonwealth* v. *Darnell D.*, 445 Mass. at 674. Further, the defendant's presence in the stolen vehicle alone would not warrant a conclusion that he knowingly possessed the burglarious instruments contained within. See *Commonwealth* v. *Boone*, 356 Mass. 85, 87 (1969) (defendant's presence in car that had firearm under driver's seat not sufficient to show he knowingly possessed firearm). In this case, however, there was additional evidence, as noted above, indicating the defendant's knowledge of the burglarious implements. The two disguises, the dent puller, as well as several other tools, including screwdrivers and pliers, were in the back seat of the car within plain view[11]; a map of the local area was on the front seat. In light of all these

---

[10]The defendant also moved for a required finding at the close of all the evidence. We note that the Commonwealth's case did not deteriorate but was, in fact, strengthened, see *Commonwealth* v. *Perry*, 432 Mass. 214, 230 n.12 (2000), by, among other evidence, the defendant's testimony that he had known the driver "for a while." See, e.g., *People* v. *Land*, 30 Cal. App. 4th 220, 228 (1994) (fact that defendant and driver were friends and presumably knew each other well was one of "additional facts beyond mere presence or access, which then coupled with [the defendant's] status as a passenger, g[a]ve rise to the inference [the defendant] had constructive possession of the stolen vehicle"); *State* v. *McCoy*, 116 N.J. 293, 303 (1989) ("an inference of possession may arise from a passenger's presence in a stolen automobile when that presence is coupled with additional evidence that the passenger knew the driver, knew that the vehicle was stolen, and intended to use the vehicle for his or her own benefit and enjoyment"). Contrast *Commonwealth* v. *Campbell*, 60 Mass. App. Ct. at 217 (no indication of relationship of passenger-defendants to driver).

[11]Cf. *Commonwealth* v. *Rousseau*, 61 Mass. App. Ct. 144, 150-152 (2004)

factors, submission of this issue to the jury was warranted. See *Commonwealth* v. *Johnson*, 7 Mass. App. Ct. at 192, 194 (defendant's presence in car together with further incriminating evidence, e.g., his participation in burglary, his flight from police both in vehicle and on foot, and his giving false name, sufficient to send issue of possession of burglarious tools located in trunk to jury).[12]

*Judgments affirmed.*

---

(sufficient evidence to convict vehicle passenger of possession of burglarious tools, consisting of two screwdrivers, which were found on seat with two sets of black gloves and black ski mask).

[12]We note that the evidence of both crimes was sufficient whether the defendant was tried as a joint venturer, as here, or as a principal.