NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReportersjc.state.ma.us

16-P-1343                                    Appeals Court

COMMONWEALTH  vs.  CHARLES E. SUMMERS.

No. 16-P-1343.

Bristol.     September 7, 2017. - May 25, 2018.

Present:  Green, C.J., Trainor, Vuono, Wolohojian, Milkey,
Blake, & Singh, JJ.[1]

Firearms.  Evidence, Firearm, Constructive possession.
Practice, Criminal, Required finding.

Complaint received and sworn to in the Taunton Division of the District Court Department on August 3, 2015.

The case was heard by Paula J. Clifford, J.

Robert J. Galibois, II, for the defendant.
Robert P. Kidd, Assistant District Attorney, for the Commonwealth.

---

[1] This case was initially heard by a panel comprised of Justices Vuono, Wolohojian, Milkey, Blake, and Singh. After circulation of a majority and a dissenting opinion to the other justices of the Appeals Court, the panel was expanded to include Chief Justice Green and Justice Trainor. See Sciaba Constr. Corp. v. Boston, 35 Mass. App. Ct. 181, 181 n.2 (1993).

BLAKE, J.  Following a jury-waived trial in the District Court, the defendant, Charles E. Summers, was convicted of carrying a firearm without a license and unlawful possession of ammunition.[2]  The defendant appeals, contending that the evidence that he possessed these items was insufficient as a matter of law.  We affirm.

Background.  Taking the evidence, and the reasonable inferences to be drawn from it, in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the Commonwealth presented the following facts. At 10:15 A.M. on August 3, 2015, Taunton police Officer Brett Collins pulled over a Kia Spectra automobile after "it failed to stop at [a] stop sign."  As he approached the vehicle, Officer Collins saw the defendant, who was the sole occupant of the back seat, turn and look at him.  He also observed a woman in the driver's seat and a man in the front passenger seat.  Officer Collins recognized the defendant as someone with whom he was familiar, and the two exchanged greetings.  On the seat next to the defendant was a cellular telephone.

Officer Collins obtained identification from the two people in the front compartment of the Kia, but not from the defendant.

---

[2] The defendant was acquitted of defacing a firearm serial number.

As Officer Collins "ran" the information in his cruiser, he learned that there was an outstanding warrant for the front seat passenger, Michael MacNamara.[3]  Officer Collins then noticed that the defendant was out of the Kia and walking toward him, holding a cellular telephone.  The defendant told the officer that his son had fallen or was hurt and asked if he could leave.  After getting Officer Collins's permission, the defendant began walking away from the area where the Kia was stopped.  Immediately upon the defendant's departure from the scene, MacNamara began to yell and gesture toward the rear of the Kia, where the backpack containing the firearm eventually was located.  The defendant then began to run and Officer Collins was unable to catch him.

Returning to the Kia, Officer Collins found that MacNamara had left the scene as well.  The driver, who was still seated, directed the officer to the back of the Kia.  On the floor of the back seat, behind the driver, was a backpack.  Officer Collins opened the backpack, and found a .45 caliber Sig Sauer P220 handgun, a magazine for the gun, as well as .45 caliber bullets inside a sock that was tied at one end.

---

[3] There also was a warrant outstanding for the defendant, although there is no indication that Officer Collins was aware of it at the time.

The following month, on September 1, 2015, the defendant was arrested on a warrant for firearm-related charges arising out of this incident.  The defendant asked what the charges stemmed from.  When advised what they were, the defendant said that "he didn't understand why he was being charged with the gun because the person who was in the car with him had a record as long as his" and had also "fled like he did."

Discussion.  When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt" (emphasis in original).  Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 152 (1999), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).  See Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 475 (2008).  Rather, the relevant "'question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original)."  Commonwealth v. Latimore, 378 Mass. at 677, quoting from Jackson v. Virginia, supra.  See Commonwealth v. Pixley, 77 Mass. App. Ct. 624, 630 (2010).

Here, the Commonwealth's case against the defendant was presented on the theory of constructive possession, which requires the Commonwealth to establish the defendant's

"knowledge coupled with the ability and intention to exercise dominion and control."  Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004), quoting from Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989).  A defendant's "knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial." Commonwealth v. Casale, 381 Mass. 167, 173 (1980).  In constructive possession cases, a defendant's presence alone is not enough to show the ability and "intention to exercise control over the firearm, but presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.'"  Commonwealth v. Albano, 373 Mass. 132, 134 (1977), quoting from United States v. Birmley, 529 F.2d 103, 108 (6th Cir. 1976).

The defendant relies predominantly on Commonwealth v. Romero, 464 Mass. 648, 652-659 (2013) (evidence of defendant's presence in automobile, which he owned and in which firearm was being passed around, insufficient to establish constructive possession).  However, while the defendant's presence in the Kia itself, "without more, is not sufficient evidence . . .[,] [p]resence in the same vehicle supplemented by other incriminating evidence, . . . may suffice."  Commonwealth v. Sinforoso, 434 Mass. 320, 327 (2001), quoting from Commonwealth

v. <u>Garcia</u>, 409 Mass. 675, 686-687 (1991).  Here, we have significantly more than mere presence.

Taken in its totality, the evidence was sufficient to prove beyond a reasonable doubt that the defendant knew of the firearm and ammunition, and that he had the ability and intention to exercise control over them.  The defendant was the sole rear seat passenger in the Kia Spectra.  He was seated behind the front seat passenger and directly adjacent to the backpack, which was on the floor behind the driver.  The defendant's cellular telephone was on the seat next to him, showing some intent to exercise dominion and control over the back seat compartment.  The backpack[4] was a mere two to three feet from the defendant, well within his reach.[5]  He had the most ready access to it.  See <u>Commonwealth</u> v. <u>Sadberry</u>, 44 Mass. App. Ct. 934, 936 (1998) (gun's location near defendant in car was proper consideration on question of dominion and control).

It is a fair inference from MacNamara's behavior -- including shouting and yelling to Officer Collins and pointing to the back of the Kia -- that he was reacting to the sudden realization that the defendant, having found a pretext to get

---

[4] Nothing personal or identifiable to the defendant was found in the backpack.

[5] The defendant is six feet, seven inches tall.

permission from Officer Collins to leave the scene, had left the firearm and ammunition behind. In fact, a rational fact finder could find that it was MacNamara's protestations that caused the defendant to shift from leaving the scene, to fleeing the scene. Such a fact finder also could find that MacNamara, by affirmatively and eagerly drawing Officer Collins's attention to the backpack, made certain that the officer both found the contraband, and knew that they belonged to the defendant.

In addition, a rational fact finder could find that the defendant engineered what can reasonably be construed to be a ruse, which allowed him to flee the scene and avoid being connected to the contraband. "False statements to police may be considered as consciousness of guilt if there is other evidence tending to prove the falsity of the statements." Commonwealth v. Vick, 454 Mass. 418, 424 (2009), quoting from Commonwealth v. Robles, 423 Mass. 62, 71 (1996). Here, Officer Collins allowed the defendant to leave the scene as he claimed he had a hurt or injured child. However, when Officer Collins was alerted by MacNamara to the backpack, the defendant ran from the scene and Officer Collins was unable to see or locate him. Indeed, it took approximately one month for the defendant to be arrested. The actions of the defendant may reasonably lead to the conclusion that the story of an injured child was just that, a story.

The fact that there was an outstanding warrant for the defendant for a motor vehicle violation does not alter the result. Officer Collins and the defendant were acquainted with one another and exchanged pleasantries during the initial encounter. Officer Collins had not previously arrested the defendant, and there was no reason to believe that the officer was somehow targeting the defendant to arrest him on the outstanding warrant. Officer Collins only asked the driver and MacNamara for identification, and agreed to let the defendant leave when he asked permission to do so.

Ultimately, the defendant's claim of an injured child allowed him to flee the scene. This effort to escape from the Kia and to leave the scene is redolent of guilt. Indeed, it is the defendant's behavior <u>after</u> the police arrived that permits an inference of the defendant's intent to exercise dominion and control of the contraband <u>prior</u> to the arrival of the police. Contrast <u>Commonwealth</u> v. <u>Handy</u>, 30 Mass. App. Ct. 776, 781 (1991) (defendant's response to police negated link to contraband).

Flight is often considered a "plus" factor supporting an inference that the occupant intended to exercise dominion and control over the illegal contraband. See <u>Commonwealth</u> v. <u>Namey</u>, 67 Mass. App. Ct. 94, 98-102 (2006). See also <u>Commonwealth</u> v. <u>Sabetti</u>, 411 Mass. 770, 778 (1992) (evidence of constructive

possession sufficient where defendant attempted to flee, demonstrating consciousness of guilt); Commonwealth v. Jefferson, 461 Mass. 821, 826 (2012) (reasonable jury could infer that defendant fled to throw away contraband that he feared police would find during stop).  It is also notable that of the three people in the Kia, the defendant was the only person who initially neither stayed at the scene nor tried to draw the attention of Officer Collins to the backpack. Constructive possession "may be inferred from circumstantial evidence which, in terms of practical experience of the conduct of human beings, points to such a finding."  Commonwealth v. Brown, 34 Mass. App. Ct. 222, 225 (1993).

Additionally, the defendant's actions and statements when he was arrested provide a further basis for the fact finder to infer that the defendant constructively possessed the firearm and ammunition.  The defendant stated that he did not "understand why he was being charged with the gun, because the person who was in the car with him had a record as long as his" and had also "fled like he did."  From such statements, a rational fact finder could infer that the defendant knew there was a firearm and ammunition in the backpack, and that he possessed it (whether on his own or jointly with one of the other occupants of the Kia).  The defendant persisted in his efforts, which began with the pretext at the scene, to blame

others or, at the very least, to distance himself from the contraband. Collectively, this evidence provides a "particular link," Commonwealth v. Boria, 440 Mass. 416, 420 (2003), between the contraband and the defendant. Contrast Commonwealth v. Romero, 464 Mass. at 658 (no additional evidence linking defendant's access to vehicle to firearm inside). It also constitutes further consciousness of guilt evidence that tips the scale in favor of sufficiency. See Commonwealth v. Elysee, 77 Mass. App. Ct. 833, 846-847 (2010) ("nonresponsive and deceptive interactions" with police were indicative of consciousness of guilt).

A rational fact finder, employing common sense, see Commonwealth v. Drew, 4 Mass. App. Ct. 30, 32 (1976), could reasonably find that the defendant had the requisite ability and intent to exercise dominion and control over the firearm and ammunition. See Commonwealth v. McIntosh, 78 Mass. App. Ct. 37, 41 (2010) ("Intent to exercise dominion and control can be inferred from the defendant's conduct"). As has been stated in the context of a joint venture, "[t]he line that separates mere knowledge of unlawful conduct and participation in it, is 'often vague and uncertain. It is within the province of the [fact finder] to determine from the evidence whether a particular defendant [has] crossed that line.'" Commonwealth v. Longo, 402

Mass. 482, 487 (1988), quoting from Commonwealth v. Cerveny, 387 Mass. 280, 287 (1982).

The combination of the defendant's location in the Kia, his adjacency to the backpack, the ruse he created, his flight from the scene, and his statements upon his arrest provides a sufficient basis on which a rational fact finder could infer that the backpack -- and thus the firearm and ammunition -- belonged to the defendant.

Judgments affirmed.

VUONO, J. (dissenting, with whom Wolohojian and Singh, JJ., join).  I agree with the majority that, viewed in the light most favorable to the Commonwealth, the evidence sufficed to prove beyond a reasonable doubt that the defendant possessed the requisite knowledge of the firearm and ammunition and that he had the ability to control those items.  Because I conclude that the evidence was insufficient to establish beyond a reasonable doubt that the defendant intended to exercise dominion and control over the firearm and ammunition, I would reverse the convictions.

The Supreme Judicial Court has emphasized that, in constructive possession cases, the question whether there is sufficient proof of intent to exercise dominion and control over the weapon or contraband is a distinct inquiry that must be satisfied by proof beyond a reasonable doubt.  See Commonwealth v. Romero, 464 Mass. 648, 653-654 (2013).  Romero, like this case, involved the discovery of a firearm in a vehicle with multiple occupants.  The firearm in question was being looked at by the person sitting next to the defendant, who was the driver and owner of the car.  The court held that the defendant's proximity to the firearm in plain view in his own vehicle coupled with evidence that the defendant had handled the firearm earlier in the day supported the inference that the defendant knew of the firearm and had the ability to control it, but did

not support an inference that the defendant had the intent to exercise dominion and control over the firearm.  Ibid.  The court reasoned that, despite the defendant's proximity to the firearm, intent to control could not be inferred from knowledge and the ability to control.  Id. at 655-659.

As Romero demonstrates, where a firearm is found in proximity to multiple individuals in a vehicle but not in the actual possession of any of them, proving that each of them individually (or jointly) intended to exercise dominion and control over the firearm is neither an empty nor necessarily simple exercise.  Such intent is generally proven by circumstantial evidence, and the reasonable inferences that can be drawn therefrom.  Id. at 653.

For example, this court's cases hold that the intent to exercise dominion and control over a firearm or contraband may be inferred from evidence tending to show a defendant's special connection to the item or to the place where it is located.  See Commonwealth v. Valentin, 55 Mass. App. Ct. 667, 671 (2002) (defendant's intent to control gun found in open view in backpack in vehicle that defendant was driving inferred where backpack also contained defendant's paystub and work shirt). Contrast Commonwealth v. Frongillo (No. 1), 66 Mass. App. Ct. 677, 684-686 (2006) (firearms and ammunition found in closets of

apartment occasionally occupied by defendant warranted inference of knowledge and ability to control but not intent to control).

Such intent also may be inferred when the defendant makes an attempt to conceal or hide the item in question, or makes a gesture toward it to suggest that he had an intent to exercise control over it.  See Commonwealth v. Brzezinski, 405 Mass. 401, 410 (1989) (defendant responded to police entry by running into closet containing cocaine and drug paraphernalia); Commonwealth v. Horton, 63 Mass. App. Ct. 571, 578 (2005) (defendant reached below his leg and kicked at something below driver's seat in front of him where gun was ultimately found); Commonwealth v. McIntosh, 78 Mass. App. Ct. 37, 41-42 (2010) (defendant ran to bedroom and proceeded directly to bed where firearm was discovered, and attempted to prevent others from entering room). Contrast Commonwealth v. Ramos, 51 Mass. App. Ct. 901, 902-903 (2001) (although knowledge of shotgun was established by fact part of it was protruding from under mattress across from where defendant was sitting, neither ability nor intent to control shotgun was established due to absence of personal belongings connecting defendant to premises).

Here, there was no evidence of a special connection between the defendant and the firearm or its location.  Apart from being a passenger in the car, there was no link between the defendant and the vehicle.  Moreover, the defendant's only link to the

backpack was that it was located on the floor of the back seat within his reach.[1]  There was no evidence that the backpack, which was located in an area accessible to all three occupants of the vehicle, and was not open,[2] belonged to the defendant.[3] Nor was there evidence that the defendant made any gesture

---

[1] The majority posits that by placing his cellular telephone on the seat next to him the defendant "[demonstrated] some intent to exercise dominion and control over the back seat compartment."  Ante at     .  This proposition places too much weight on an innocuous gesture.  In any event, even if the defendant exercised control over the back seat when he put his telephone down, it does not follow that he also intended to exercise control over the backpack, which was on the floor.

[2] The majority suggests that the defendant "had the most ready access to [the backpack]."  Ante at     .  While it is true that the defendant was the only person sitting in the back seat, there is no evidence that the defendant's access to the backpack was superior to that of the front seat passenger or even the driver.  Commonwealth v. Sadberry, 44 Mass. App. Ct. 934 (1998), upon which the majority relies is distinguishable. In Sadberry, a gun was found under the defendant's seat in the vehicle he was operating.  The gun smelled of burnt gun powder and had been fired by one of the passengers.  We observed that the question whether the defendant intended to exercise dominion and control over the gun was a close one, but we concluded that evidence of the defendant's presence in the car with two loaded guns, one of which was in plain view, ski masks, gloves, and black clothing, sufficed to establish an intent to control the firearm.  Id. at 936.

[3] As the majority acknowledges, there was no evidence that the defendant had a personal connection to any of the items found in the backpack.  Officer Collins testified that a number of items were retrieved from the backpack, but there was no evidence that any of the items were tied to the defendant.  In addition, the ammunition was in a sock which, as Officer Collins acknowledged on cross examination, would not fit the defendant.

toward the backpack which would indicate ownership or an attempt to hide or conceal it.

Despite the absence of evidence connecting the defendant to the firearm, the Commonwealth argues that it met its burden of proof because it introduced evidence of the defendant's presence in the car "supplemented by other incriminating evidence" from which the fact finder reasonably could infer that the defendant had the intent to control the firearm.  Commonwealth v. Sinforoso, 434 Mass. 320, 327 (2001) (quotation omitted).  The additional inculpatory evidence on which the Commonwealth primarily relies is the behavior of the front seat passenger, Michael MacNamara, and the defendant's conduct in creating a ruse that enabled him to flee from the scene.[4]  Even viewed in the light most favorable to the Commonwealth, this evidence combined with the defendant's presence in the car and his proximity to the backpack is not sufficient to withstand a motion for a required finding of not guilty.

Officer Collins testified that, while he was obtaining information about the driver and MacNamara, the defendant approached his cruiser and informed him that his son fell or was

---

[4] Although we consider all of the evidence in its totality in determining whether the Commonwealth has met its burden of proof, we note that the Commonwealth does not argue that the defendant's comment to the police questioning the basis for the charges establishes anything more than knowledge of the firearm.

hurt and asked if he could leave. Upon receiving permission to go, the defendant began to walk away as Officer Collins started to get out of his car. At this point, MacNamara "hopped" out of the car, shouted, and made a gesture toward the back of the car. To be sure, MacNamara's behavior demonstrates that he knew of the gun and, as the Commonwealth argues, it is reasonable to infer that he did not want to be held responsible for it (hence the reason for his own flight). However, MacNamara's reaction sheds little light on the defendant's intent to control the firearm. There may be instances when a defendant's intent may be inferred from the behavior of a codefendant or a joint venturer, but this case does not present one.[5] The most that

---

[5] The Commonwealth argues that the judge could draw the reasonable inference that the defendant heard MacNamara shouting and, as the majority states, this "caused the defendant to shift from leaving the scene, to fleeing the scene." Ante at        . According to the Commonwealth, this "shift" points to the defendant's guilt and constitutes additional evidence that tips the scale in favor of sufficiency. We reject this "argument because it piles inference upon inference[,] which cannot form the basis of a conviction." Commonwealth v. Ramos, supra at 903 n.2. Furthermore, we see no support in the evidence for the majority's supposition that the defendant began to run "when Officer Collins was alerted by MacNamara to the backpack." Ante at        . Officer Collins testified only that he saw MacNamara standing and pointing over the roof of the car toward the back seat. He then returned to his cruiser, at which time he saw the defendant running. Officer Collins left the scene in his cruiser and attempted to locate the defendant without success. By the time Officer Collins had returned, MacNamara had fled. Officer Collins had no knowledge of the backpack until the driver, who had remained, showed it to him.

reasonably can be inferred from MacNamara's reaction is his own knowledge of the firearm.

This brings me to the defendant's conduct following the stop. I agree that the evidence supports the inference that the defendant created a ruse so that he could leave and that he did, in fact, flee. There is no doubt that these facts allow for the inference of consciousness of guilt.[6] But that alone does not suffice. Instead, I must ask whether this evidence reasonably permits the specific inference that the defendant intended to exercise dominion and control over the firearm. Given the limited incriminatory evidence with respect to the defendant, I cannot conclude with confidence that an inference of intent to exercise dominion and control over the firearm is reasonable here. See Commonwealth v. Sespedes, 442 Mass. 95, 102 (2004), citing Commonwealth v. Amparo, 43 Mass. App. Ct. 922, 924 (1997) (consciousness of guilt evidence, including flight upon police arrival, may have indicated knowledge of presence of contraband but did not establish intent to control it where there was no established connection between defendant and apartment);

---

[6] It bears noting that the cases cited by the majority in support of the proposition that "flight is often considered a plus factor supporting an inference that the occupant [of a motor vehicle] intended to exercise dominion and control over the illegal contraband," ante at ___, are distinguishable in so far as each case involved considerably more direct evidence of guilt.

Commonwealth v. Handy, 30 Mass. App. Ct. 776, 781-782 (1991) (defendant's flight from police, away from apartment containing contraband, insufficient to establish intent to control without any other connection to apartment).

As the Commonwealth acknowledges, there was an outstanding warrant for the defendant's arrest at the time the vehicle was stopped.[7]  This supports an alternate inference that the defendant fled because of the warrant.  See Commonwealth v. Fancy, 349 Mass. 196, 201 (1965) (weight attributed to consciousness of guilt evidence weakened considerably by fact of outstanding warrant, giving defendant additional motive for concealing his identity).  It is true that "[t]o the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies.'"  Commonwealth v. Martino, 412 Mass. 267, 272 (1992), quoting from Commonwealth v. Wilborne, 382 Mass. 241, 245 (1981).  At the same time, however, under the familiar Latimore standard, "to sustain the denial of a directed verdict, it is not enough for the appellate

---

[7] As regards the warrant, I agree with the majority that there was no evidence that Officer Collins knew of the warrant or "target[ed] the defendant to arrest him on the outstanding warrant."  Ante at     .  In any event, whether Officer Collins was aware of the outstanding warrant has no bearing on the question of the defendant's motive.  What matters is that there was an equally plausible alternative reason that explains the defendant's conduct.

court to find there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. at 677-678.  Furthermore, "in carefully defined circumstances, a jury [are permitted] to make an inference based on an inference to come to a conclusion of guilt or innocence."  Commonwealth v. Dostie, 425 Mass. 372, 376 (1997).  However, "a jury may not use conjecture or guesswork to choose between alternative inferences."  Ibid.  In this case, the court does not have conflicting inferences that can be resolved by the fact finder; the court has alternative inferences that can only be resolved by resorting to conjecture and speculation.

In sum, I conclude that the Commonwealth failed to establish the defendant's intent to exercise dominion and control over the firearm and ammunition.  In my view, the evidence in this case is weaker than what was presented in Romero and the cases upon which the Commonwealth relies.  Accordingly, the defendant's motion for a required finding of not guilty should have been allowed.

SINGH, J. (concurring in the dissent).  Although I join in the dissent, I write separately to express my concern over the majority's use of consciousness of guilt evidence to meet a gap in the essential elements of the crime charged, namely the defendant's intent to exercise dominion and control over the firearm and ammunition.  In this case, where the evidence failed to establish the defendant's connection to the backpack containing the firearm and ammunition and also failed to show any manifestation of the defendant's intent to control the contraband, the most powerful evidence the Commonwealth presented was the defendant's flight from the scene.[1]  See Commonwealth v. Carrion, 407 Mass. 263, 277 (1990) ("Flight is perhaps the classic evidence of consciousness of guilt").  However, consciousness of guilt "evidence must be probative of the defendant's feelings of guilt concerning the crime of which he is accused."  Commonwealth v. Morris, 465 Mass. 733, 738 (2013), quoting from Commonwealth v. Villafuerte, 72 Mass. App. Ct. 908, 908 (2008).

Here, the defendant fled before the officer gave any indication that he was suspicious of any criminal conduct or had

---

[1] As noted by the dissent, ante at        , the behavior of the other occupants of the car and the statements made by the defendant one month after the incident were probative, at most, only of the defendant's knowledge of the presence of the firearm and ammunition within the closed backpack.

even seen the backpack. The officer had stopped the Kia for a civil motor vehicle infraction and was checking identifications when the defendant made an excuse to leave the area. Arguably, the defendant's flight was more probative of the defendant's desire to avoid apprehension on the outstanding warrant than it was of his knowing possession of the firearm and ammunition in the backpack.[2]  See Commonwealth v. Fancy, 349 Mass. 196, 201 (1965) (weight attributed to consciousness of guilt evidence "weakened considerably" by fact of outstanding warrant, giving defendant additional motive for concealing his identity); Commonwealth v. Handy, 30 Mass. App. Ct. 776, 782 n.6 (1991) (evidence of flight alone is insufficient foundation for conviction, particularly where defendant had at least one other motive for his actions).

In any event, the defendant's flight from the scene, even if understood to be related to the firearm and ammunition, cannot make up for an absence of evidence on each of the elements of constructive possession. While consciousness of guilt evidence may support other evidence of guilt, it may not supplant the evidence concerning the necessary elements of the crime. See Commonwealth v. Mazza, 399 Mass. 395, 400 (1987)

---

[2]  As an officer testified regarding the defendant: "he's had warrants for him for my 16 years as a policeman."

(consciousness of guilt evidence cannot obscure failure of proof); Commonwealth v. Gonzalez, 475 Mass. 396, 413 (2016). See also United States v. Otero-Mendez, 273 F.3d 46, 53 (1st Cir. 2001) (evidence of flight may be introduced as probative of guilty mind "if there is an adequate factual predicate creating an inference of guilt of the crime charged" [quotation omitted]).

Here, the necessary element of the defendant's intent to exercise dominion and control over the firearm and ammunition was missing. See Commonwealth v. Romero, 464 Mass. 648, 653-654 (2013). The defendant's flight could not be used to meet this gap in the evidence -- unless the flight itself allowed for an inference of the defendant's intent to exercise dominion and control.[3] See Commonwealth v. Salemme, 395 Mass. 594, 602-603 (1985) (defendant's flight could not compensate for absence of evidence as to whether defendant fired shot). Here, the defendant's flight away from the car does not allow a reasonable

---

[3] In my view, the language of cases suggesting that a defendant's presence near contraband, supplemented by certain "plus factors," Commonwealth v. Ortega, 441 Mass. 170, 174 (2004), may "tip the scale," Commonwealth v. Boria, 440 Mass. 416, 419 (2003), in favor of sufficiency for constructive possession, tends to obscure the proper focus of the analysis. It is not a simple matter of adding up factors; rather, the factors must be viewed with respect to the reasonable inferences that may be drawn therefrom. See Commonwealth v. Romero, 464 Mass. at 654-655.

inference that he intended to control the firearm and ammunition contained within the backpack, which he left behind in the car.[4] See Black's Law Dictionary 594 (10th ed. 2014) ("dominion" means "control"); id. at 403 ("control" means "to exercise power or influence over"). See also Commonwealth v. Whitlock, 39 Mass. App. Ct. 514, 519 (1995) (constructive possession requires "evidence of dominating influence over the contraband").

The Commonwealth's case essentially consisted of the defendant's flight from a car from which a closed backpack containing a firearm and ammunition were later recovered. It is well established that proximity to contraband alone cannot establish all of the elements of possession. See Commonwealth v. Albano, 373 Mass. 132, 134 (1977). A conclusion of

---

[4] The cases relied on by the majority to support its position that flight "is often considered a plus factor supporting an inference that the occupant intended to exercise dominion and control" are inapposite. Ante at      . In Commonwealth v. Namey, 67 Mass. App. Ct. 94, 99-101 (2006), the defendant was charged with possession of a stolen motor vehicle in which he was a passenger. His intent to control the stolen motor vehicle was inferred, not from his flight from the car, but rather from his actual use of the motor vehicle with the driver to prepare to commit other crimes. Contrast Commonwealth v. Darnell D., 445 Mass. 670, 673-674 (2005) (passenger's intent to control stolen motor vehicle not established by consciousness of guilt in abandoning car, evading police, and lying about his whereabouts). Likewise, while both Commonwealth v. Sabetti, 411 Mass. 770, 778 (1992), and Commonwealth v. Jefferson, 461 Mass. 821, 826 (2012), involved flight in the constructive possession analysis, neither relied on flight to establish the element of intent to exercise dominion and control.

constructive possession based on proximity to contraband is "forged entirely of suspicion."  Commonwealth v. Gonzalez, 42 Mass. App. Ct. 235, 240 (1997).  Nor can a conviction rest solely on evidence of consciousness of guilt.  See Commonwealth v. Paniaqua, 413 Mass. 796, 803 n.7 (1992).  This is so because "there are numerous reasons why an innocent person might flee." Commonwealth v. Toney, 385 Mass. 575, 585 n.6 (1982).[5]  See Commonwealth v. Nadworny, 396 Mass. 342, 371 (1985) (consciousness of guilt evidence is equivocal in nature).

Where a conviction is premised on these two elements, necessarily involving conjecture, I cannot accept that guilt has been proven beyond a reasonable doubt.[6]

---

[5] Indeed, "the probative value of flight 'as circumstantial evidence of guilt depends on the degree of confidence with which four inferences can be drawn:  (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.'"  2 McCormick on Evidence § 263, at 314 (7th ed. 2013), quoting from United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977). See United States v. Al-Sadawi, 432 F.3d 419, 424 (2d Cir. 2005) (for flight to demonstrate guilt, each link in "chain of inferences" must be supported).

[6] As juries have long been instructed, "it is not sufficient to establish a probability, though a strong one arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty." Commonwealth v. Webster, 5 Cush. 295, 320 (1850).