NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1308

COMMONWEALTH

vs.

KRISTEN A. VAZQUEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the District Court, the defendant, Kristen A. Vazquez, was convicted of carrying a firearm without a license and carrying a loaded firearm without a license.  On appeal, the defendant argues that the judge erred in denying her motion for a required finding of not guilty because the Commonwealth did not prove that she possessed and controlled the firearm or that she knew the firearm was loaded. We agree and reverse.

Background.  On October 15, 2022, at around 2 A.M., Lieutenant Julio Toledo was parked in an unmarked police car in downtown Springfield, when the police car was hit by a car driven by the defendant.  In addition to the defendant, there

were two passengers in the car: a woman in the backseat and a man in the front passenger seat (passenger). As Toledo approached the defendant's car, he saw the passenger "reaching towards the driver's side, down and away, and [he] couldn't see [the passenger's] left hand." The defendant immediately got out of her car and said, "I know I hit your car." Toledo told her to get back in the car and asked how much she had to drink that night; seconds later, Toledo asked her to step back out.

Toledo told another officer, who had recently arrived on the scene, to have the passenger step out of the car, and "pat him down for [the officers'] safety," and warned him to "watch [the passenger's] left hand." The defendant then leaned into the car and repeated what Toledo said to the passenger; Toledo interpreted the defendant's movements as trying to block his view of the inside of the car. An officer pat frisked the passenger and "then [the passenger] abruptly, suddenly, without warning entered a full sprint to the alleyway." When both the defendant and the passenger were outside of the car, the woman in the backseat was moving a blanket and "making exaggerated movements towards the front of the [car]." The woman was later asked to get out of the car and "back away from the traffic stop." The passenger and the woman were never identified.

As Toledo administered a field sobriety test, an officer searched the passenger side and center console of the car, and

after the officer did not find anything, Toledo said "its not in the center console?"  The defendant told Toledo that she had just picked up the car that morning and did not have anything in it.  Toledo resumed the field sobriety tests and arrested the defendant for operating under the influence.

Toledo then conducted an inventory search of the car and found a firearm in between the driver's seat and the center console.  Toledo commented that the passenger's hand "was over there," and another officer said, "that explains why your boy took off."  Toledo testified that he knew the firearm was loaded when he found it because the external indicator was raised, which "warn[s] the handler of the weapon that the firearm is, in fact, loaded."

As relevant here, the defendant was charged with carrying a firearm without a license and carrying a loaded firearm without a license.[1]  The Commonwealth called Toledo as its only witness, and his body-worn camera footage was entered in evidence.  At the close of the Commonwealth's evidence, the defendant filed a motion for a required finding of not guilty (motion), and renewed the motion after the close of all evidence; the motion was denied each time.

---

[1] The defendant admitted to sufficient facts for operating a motor vehicle while under the influence of alcohol.  The judge also found the defendant responsible for possession of a class B controlled substance.

3

The judge found the defendant guilty. After filing a notice of appeal, the defendant moved for reconsideration in the District Court. After hearing, the judge denied that motion.

Discussion. 1. Sufficiency of the evidence. a. Possession of the firearm. The defendant argues that the Commonwealth's evidence established that the firearm at issue was possessed and controlled by another, and therefore, the judge erred in denying the motion. "In reviewing the denial of a motion for a required finding of not guilty . . . 'we view the evidence in the light most favorable to the Commonwealth in order to determine whether the evidence was sufficient to satisfy a rational trier of fact of each element of the offense beyond a reasonable doubt.'" Commonwealth v. Snow, 76 Mass. App. Ct. 116, 118 (2010), quoting Commonwealth v. Brown, 401 Mass. 745, 747 (1988). Here, "the Commonwealth's case rested on a theory of constructive possession." Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004). Proof of constructive possession requires a showing that the defendant had "knowledge coupled with the ability and intention to exercise dominion and control" over the firearm. Commonwealth v. Than, 442 Mass. 748, 751 (2004), quoting Sespedes, supra.

The Commonwealth argues that there was sufficient evidence to prove that the defendant intended to exercise dominion and control over the firearm because it was located "in a position

4

easily accessible to the defendant alone," and her "behavior during the stop indicate[d] that she was attempting to prevent the [firearm]'s discovery."  However, "in order to 'establish the defendant's "relationship" to contraband located in a common area sufficient to permit an inference of control over the contraband, there must be a more particular link to the defendant' other than [her] presence and ownership" of the car. Commonwealth v. Romero, 464 Mass. 648, 656 (2013), quoting Commonwealth v. Boria, 440 Mass. 416, 420-421 (2003).

Although the firearm was found on the driver's side of the car, there was insufficient evidence for a trier of fact to conclude, beyond a reasonable doubt, that the defendant intended to control and possess the firearm.  See Romero, 464 Mass. at 656-657.  Apart from the firearm's location, there is little evidence of a "special connection" between the defendant and the firearm.  See Commonwealth v. Summers, 93 Mass. App. Ct. 260, 264 (2018).  The defendant's proximity to the firearm is more relevant "to whether the defendant had the ability to control the firearm, than [her] intention to exercise that control." Romero, supra at 658.

> "[W]hen the defendant is present at or near the scene where the contraband is found . . . the behavior of the defendant generally provides a basis upon which the court determines whether there was sufficient evidence relating to possession, including evidence of consciousness of guilt revealed by suspicious movements or actions, attempted

flight, and proximity to contraband in plain view or hidden."

Commonwealth v. Frongillo, 66 Mass. App. Ct. 677, 683 n.13 (2006).

Here, Toledo did not see the defendant "make movements" towards the area where the firearm was found that would suggest she had an intent to control the firearm. Contrast Commonwealth v. Cotto, 69 Mass. App. Ct. 589, 594 (2007) (gun found where defendant had been "shoving his feet" and this "conduct allowed the jury to infer a 'personal connection' between the defendant and the firearm"); Commonwealth v. Horton, 63 Mass. App. Ct. 571, 578 (2005) (officers saw defendant reach down and kick below driver's seat, where handgun was found, these facts helped support finding that he had control). Notably, it was the passenger who made "furtive movements" towards where the firearm was found. See Commonwealth v. Torres-Pagan, 484 Mass. 34, 39 (2020) ("Furtive is defined as 'done by stealth' or 'secret'" [citation omitted]).

The defendant remained at the scene, while the passenger fled "abruptly and spontaneously." "Flight is often considered a 'plus' factor supporting an inference that the occupant intended to exercise dominion and control over the illegal contraband." Summers, 93 Mass. App. Ct. at 264. Additionally, the defendant cooperated with the police, including during the

6

field sobriety tests. "[A]n inference of unlawful possession . . . may be drawn from the defendant's actions at the scene." Commonwealth v. Antonio, 45 Mass. App. Ct. 937, 938 (1998). Here, "the factual considerations cited by the Commonwealth shed little light on the defendant's intent." Romero, 464 Mass. at 659. Contrast Summers, supra at 265 ("[t]he combination of the defendant's location in the Kia, his adjacency to the backpack, the ruse he created, his flight from the scene, and his statements upon his arrest provide[d]" sufficient evidence of intent to control firearm).

On this record, there was insufficient evidence to satisfy any rational trier of fact beyond a reasonable doubt that the defendant had the intention to exercise dominion and control over the firearm.[2] See Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979) ("it is not enough for the appellate court to [conclude] that there was some record evidence, however slight, to support each essential element of the offense; it must [hold] that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt").

---

[2] Because we determine that there was insufficient evidence as to the defendant's intention to exercise dominion and control over the firearm, it is unnecessary to discuss the separate requirement of knowledge.

b.  Possession of a loaded firearm.  The defendant additionally argues that there was insufficient evidence to support the conviction of carrying a loaded firearm without a license.  "To convict the defendant of unlawful possession of a loaded firearm, the Commonwealth [is] required to prove that the defendant knowingly possessed a firearm that was loaded with ammunition . . . ."  Commonwealth v. Galarza, 93 Mass. App. Ct. 740, 748 (2018), quoting Commonwealth v. Johnson, 461 Mass. 44, 52 (2011).

However, "in order to be convicted under G. L. c. 269, § 10 (n), an individual must first have been convicted under G. L. c. 269, § 10 (a) or (c)."  Commonwealth v. Brown, 479 Mass. 600, 604 (2018).  Because we hold that there was insufficient evidence to convict the defendant of carrying a firearm without a license, the defendant's conviction of carrying a loaded firearm without a license must also be reversed.  See Commonwealth v. Taylor, 486 Mass. 469, 475 (2020) (carrying a loaded firearm without a license "is not a freestanding crime").

Conclusion.  On the counts of the complaint charging carrying a firearm without a license and carrying a loaded firearm without a license, the judgments are reversed, the

findings are set aside, and judgments shall enter for the defendant.

<u>So ordered</u>.

By the Court (Blake, C.J.,
  Shin & Wood, JJ.[3]),

Clerk

Entered:  May 18, 2026.

---

[3] The panelists are listed in order of seniority.